T. R. Allen et al. v. Exchange National Bank.

Decided July 1, 1899.

Estoppel—Notice by Possession Excluded.

A grantee in possession of land will be estopped to assert his title as against one claiming under a subsequent mortgage executed by the grantor, where such grantee had given the grantor permission to execute the mortgage, although the mortgagee was not aware of such fact, the title being still apparently in such grantor, and but for such permission from the grantee would have been charged with notice by the latter's possession of the property.

Appeal from Wise. Tried below before Hon. J. W. Patterson.

*Bullock & Basham*, for appellants.

*R. E. Carswell*, for appellee.

STEPHENS, Associate Justice.—March 10, 1896, T. R. Allen mortgaged the land in controversy to appellee bank, though he had al-

ready in August, 1894, conveyed it to his son, T. F. Allen, who was in possession when the mortgage was executed and recorded, but whose deed had never been placed on record, the title appearing on the face of the deed records to be in T. R. Allen. The mortgage was given to secure a pre-existing debt, but it took the place of personal security released at the time of its execution. The mortgagee had no knowledge of the unrecorded deed to T. F. Allen until long after the mortgage was executed, but believed the title to be in T. R. Allen.

T. F. Allen testified on the trial "that his father in 1896 asked him if he had ever put his deed on record, and he told him that he had not. His father then requested him to allow him to mortgage the land, and that he consented that he might do so." In pursuance of this understanding, though without knowledge thereof on the part of the mortgagee, the mortgage was made. The facts are stated more in detail in the trial court's conclusions of fact, which we adopt.

Our conclusion of law is that T. F. Allen was estopped from disputing the validity of the mortgage. Every man is presumed to intend the natural consequences of his own conduct. In consenting for his father to mortgage the land, T. F. Allen consented for his father to do whatever was essential thereto, to wit, to represent himself as the owner, which he in effect did when he executed the mortgage. The consent given his father to mortgage the land, under the circumstances disclosed by the testimony, was equivalent to an agreement with his father to withhold his own deed from record to enable him to do it. He thus in effect, and, as must be inferred, intentionally held his father out as the owner with the expectation that another would deal with him on the faith of such apparent ownership. Now that which was contemplated has actually taken place, and the appellee bank has changed its position for the worse, it does not lie in the mouth of T. F. Allen to deny that his father was the owner.

It matters not that the bank was ignorant of what had passed between the Allens. But for the consent of the son that the father might represent himself as the owner, it is to be inferred that the father would not have done so. It was that consent then that caused the father to deceive the bank.

Nor does it matter that but for the consent and consequent representation of title in T. R. Allen the possession of T. F. Allen would have given notice of his title. He waived that by consenting that the land might be mortgaged as the property of T. R. Allen. Besides, possession under an unrecorded deed is held to be equivalent to registration only because it should provoke such inquiry as would lead to a knowledge of the unrecorded conveyance; but it does not lie in the mouth of one authorizing another by affirmative conduct to deceive by suppressing the truth to urge that the one so deceived should not have believed the false representation but should have inquired and found out the truth. In other words, as T. F. Allen had authorized T. R. Allen to represent to appellee bank that T. R. Allen was the owner of the

land and to suppress the truth of T. F. Allen's title, it was the same as if T. F. Allen had done it himself,—qui facit per alium, facit per se,—and certainly he would not be heard to say to appellee bank: "You ought not to have believed me, but should have inquired and found out the truth." As said by Mr. Pomeroy in his admirable work on Equity, volume 2, section 810, "If the real owner resorts to any affirmative acts or words, or makes any representation, it would be in the highest degree inequitable to permit him to say that the other party, who had relied on his conduct and had been misled thereby, might have ascertained the falsity of his representations."

This case, then, comes within the following quotation from Jones on Mortgages, volume 1, section 683: "And so if an owner of land represents to a creditor that it belongs to another, and induces such creditor to take a mortgage from that person, and to extend the time of payment of the debt, he is estopped to claim the land as against the lien of the mortgage." For the requisites of estoppel, see 2 Pomeroy's Equity Jurisprudence, section 805.

The judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

In answer to motion for rehearing we are asked by appellee to correct the court's finding that T. F. Allen was a married man and living on the land when the mortgage was made, March 10, 1896, since the testimony of T. F. Allen as set out in the statement of facts contained the admission that he did not marry and take his wife to the land till April following. In another part of his testimony, however, he stated that he did not recollect whether he married in the winter of 1895 or the spring of 1896.

Taken altogether, we hardly think the testimony warranted the finding that he married in March, 1896, and our conclusion from the evidence would be that his marriage took place in April, 1896. But we consider this an immaterial issue, since no homestead right was set up in the pleadings.

*Overruled.*

Writ of error refused.