**JOHNSON et al. v. SUGG et al.**
**(No. 743-4681.)**

(Commission of Appeals of Texas, Section B.
Feb. 23, 1927.)

1. **Appeal and error** 232(1)—**Finding of fact, assumed in special issue not objected to on such ground, must be accepted as conclusive.**

Finding of fact, assumed in special issue not objected to on such ground, must be accepted as conclusive by Supreme Court.

2. **Trial** 350(4)—**Payee would not be entitled to submission of issue of negligence in voluntarily delivering note, trust deed, and release of lien directly to maker.**

Payee voluntarily, intentionally and unequivocally delivering note, deed of trust and release of lien directly to maker would not be entitled to submission of question of negligence therein, in action to cancel note and deed; such act proving payment and release on its face.

3. **Estoppel** 116—**Burden was on payee to show that maker of note obtained possession from payee's secretary contrary to instructions, and not because of payee's intentional or negligent act.**

In suit to cancel note and trust deed securing it, burden was on defendant payee to prove that they came into maker's possession through payee's secretary, contrary to payee's instructions, and not because of payee's intentional or negligent act.

4. **Estoppel** 96—**Surety holding indemnity is not negligent in surrendering securities to principal in possession of evidence of indebtedness and release thereof without further inquiry.**

A surety holding indemnity may assume, in absence of notice to contrary, that principal's possession of evidence of indebtedness and complete release thereof, duly executed by creditor, is what it purports to be, and is not negligent in not making further inquiry as to facts of payment and release before surrendering securities.

5. **Estoppel** 87—**One making false representation acted on by another to his prejudice is estopped to plead negligence in relying thereon.**

One making to another a false representation, on which latter relies and acts to his prejudice, is estopped to plead negligence in relying thereon.

6. **Estoppel** 96—**Estoppel is question of reliance as affected by notice, though predicated on negligence.**

Estoppel may be predicated on negligence, but even then is a question of other party's reliance, as affected by notice.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Suit by Montford J. Johnson and others against J. D. Sugg and another. A judgment

for plaintiffs was reversed, and the cause remanded by the Court of Civil Appeals (284 S. W. 705), and plaintiffs bring error. Judgment of the Court of Civil Appeals reversed, and judgment of the trial court affirmed.

J. B. Dudley, of Oklahoma City, Okl., Bond, Melton & Melton, of Chickasha, Okl., Coffee, Holmes & Coffee, of Miami, and Underwood, Jackson & Johnson, of Amarillo, for plaintiffs in error.

H. E. Hoover, of Canadian, Bailey & Hammerly, of Chickasha, Okl., and Embry, Johnson & Tolbert, of Oklahoma City, Okl., for defendants in error.

SPEER, J. Plaintiffs in error recovered a judgment against defendants in error in the district court of Roberts county, canceling a certain $50,000 note and a mortgage securing the same executed by Ben F. Johnson as principal and Mamie Johnson, E. B. Johnson, and Mollie Johnson as sureties. On appeal, the Court of Civil Appeals reversed and remanded the cause; the decision being evidenced by a separate opinion of each of the judges.

The issue of estoppel as against defendant in error Sugg became important in the trial; the estoppel being predicated upon a release of the lien reciting payment of the note executed by him, which came into the hands of Ben F. Johnson, who exhibited it to E. B. Johnson, telling him the note had been paid, and the lien released.

Justice Randolph wrote the leading opinion for the court, in which he held the case should be reversed because the jury's answer that the $50,000 note had been paid was not supported by the evidence, and the verdict should have been set aside; that, for reasons given at length, Sugg was not estopped by his conduct in executing the release; that it was error in the trial court to instruct that the burden was on the defendant Sugg to prove that in delivering the note and release to Ben F. Johnson he was not guilty of negligence; and that the trial court erred in not submitting the issue of negligence upon the part of E. B. Johnson in delivering to Ben F. Johnson the securities which he held from the latter as indemnity as a surety. Special Justice Williams concurred with Justice Randolph in the disposition of the case, limiting his concurrence, however, to the grounds, first, the error of the trial court in refusing to submit to the jury the issue of E. B. Johnson's negligence in surrendering the escrow notes without further inquiry, and, second, in placing upon Sugg the burden of proof to show that he was not guilty of negligence in surrendering the note and deed of trust to Ben F. Johnson. Chief Justice Hall likewise concurred in the disposition of the appeal upon the sole ground that the trial court had erred in refusing to submit the issue as

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

to E. B. Johnson's negligence in surrendering the escrow notes without further inquiry. He expressly agreed with Special Justice Williams in the opinion that Sugg was estopped by his conduct, provided E. B. Johnson was not negligent in surrendering the securities which he held as indemnity. So that the holding of the court is, the cause should be reversed and remanded for the error of the trial court in refusing to submit the issue of E. B. Johnson's negligence in the respect above mentioned, and for the court's error in imposing the burden of proof upon defendant in error Sugg upon the question of his negligence in delivering the note and release to Ben F. Johnson—all the justices agreeing upon the first ground, and a majority, consisting of Justices Randolph and Williams agreeing upon the other point.

Justice Randolph's holding that the answer of the jury that the $50,000 note had been paid is not supported by the evidence, though assigned as error in the application, appears not to have been the holding of the court, since neither of the other justices appears to have assented thereto. However that may be, the question becomes wholly immaterial in view of our conclusions upon other matters hereafter stated.

We will therefore consider only those questions upon which the reversal was ordered. The case was submitted on special issues and answers returned as follows:

"(1) Has the $50,000 note, dated San Angelo, Texas, August 9, 1919, payable to J. D. Sugg, executed by Ben F. Johnson, Mamie Johnson, E. B. Johnson, and Mollie Johnson, been paid? Answer: Yes.

"(2) Did Ben F. Johnson, on the 22d day of August, 1919, exhibit to E. B. Johnson the $50,000 note in question in this case, together with deed of trust securing said note, and release of said deed of trust executed by J. D. Sugg, reciting the payment of said $50,000 note, and state to the said E. B. Johnson that said note had been paid? Answer: Yes.

"(3) Did E. B. Johnson, by reason of the exhibition to him of said note, deed of trust, and release, and the statement that said note had been paid, and relying thereon, surrender to Ben F. Johnson the three escrow notes in question? Answer: Yes.

"(4) In delivering the $50,000 note, deed of trust securing the same, and release of deed of trust to Ben Johnson, did J. D. Sugg exercise such reasonable care and caution as an ordinarily prudent person would exercise under like or similar circumstances? Answer: No."

[1, 2] The court instructed that the burden of proof as to the questions 1, 2, and 3 was upon the plaintiffs and as to question 4 was upon the defendant. In question 4 the court clearly assumes that J. D. Sugg delivered the $50,000 note, deed of trust, and release to Ben F. Johnson, and the charge is not objected to upon this ground. So that we must accept the finding as conclusive that Sugg did deliver these instruments to Ben F. Johnson.

If defendant in error Sugg delivered these instruments directly to Ben F. Johnson, there could not possibly be any question of negligence involved in his act. The transaction is simple, unambiguous, and direct. Sugg was not entitled to have the jury to find whether or not his intentional, unequivocal act of surrendering directly to Ben F. Johnson his note, accompanied by a complete release, was negligence or not. It is not a question of negligence. There is nothing in such transaction to raise the issue of negligence. The act thus found was voluntary, intentional, and unequivocal, and on its face proved payment and release.

[3] We assume, however, that the matter of negligence is sought to be brought into the case, and was actually submitted, in view of the testimony tending to show that these papers had come into Ben F. Johnson's hands through the act of Sugg's secretary, contrary to Sugg's actual instruction. But, if this be true, Sugg has had the benefit of the submission of such issue, and his only complaint is that the court erred in placing upon him the burden of proof to show that he was free from negligence. Granting that the issue was in the case, yet we think the trial court was right in his charge as to the burden of proof. Defendant in error was seeking to avoid the ordinary legal effect of his release being in the hands of Ben F. Johnson by the contention that it had come wrongfully into his possession without fault upon his part and contrary to his instructions. Proof that such instruments were in the possession of Ben F. Johnson, in the absence of notice to the contrary, would justify plaintiffs in error or any one else interested in the matter to assume they were rightfully there, and to act upon this assumption; it would make a prima facie case for them, which could only be overthrown by showing, as Sugg undertook to show, that the delivery was not his act. This being true, the burden was upon him to make such showing; and this showing included the fact that such possession was not due to an act, intentional or negligent, of his.

[4] It remains to be seen whether or not the court should have submitted the requested issue as to E. B. Johnson's negligence in surrendering the securities as he did. Here again we think the issue of negligence was not in the case. A surety holding indemnity, and whose property rights are thus affected by his principal's debt, has the right to assume, in the absence of notice to the contrary, that his principal's possession of the evidence of indebtedness, together with a complete release thereof, duly executed by the creditor, is what it purports to be, and his reliance thereon is justified in law. There is nothing in such a transaction to raise the issue of negligence in not making further inquiry as to the facts of payment and release. In such a case the creditor has said in the most

solemn way, to wit, in writing duly acknowledged, that the indebtedness has been fully paid and the lien securing it has been released. Not only has he said this, but his written evidence of such fact is accompanied by the original instrument of indebtedness which in the usual course of things would only be found in the hands of the maker after payment. The case certainly is as strong as though Sugg had declared to E. B. Johnson by word of mouth to the same effect. Such written release is a statement to the world, to whomsoever it may concern, that the matters therein stated are true, and a statement, whether oral or in writing, such as this, entitles any one interested in the subject-matter to proceed upon the assumption that it is true, in the absence of notice to the contrary. Such person is not required to presume against the truth of such statement or to pursue any sort of inquiry to ascertain if it is false. He may stop with the representation. If in good faith he relied thereon, it does not lie in the mouth of the other to say to him, "You were negligent in not investigating for yourself."

In Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900, Buchanan in selling to Burnett a tract of land represented that he had a good title, which representation Burnett relied upon; nevertheless Buchanan furnished to Burnett an abstract of title which showed the defect for which Burnett subsequently sought to rescind. The Supreme Court, through Justice Brown, said:

"The plaintiff in error requested the trial court to give to the jury a charge to the effect that, in order for Burnett to avail himself of the misrepresentations of title, he must not only have been ignorant of the existence of the defect, but must have relied 'solely' upon that representation in making the purchase. The trial court refused to give the requested charge, and the Court of Civil Appeals correctly held that it was sufficient if Burnett relied upon the false representations made by Buchanan and would not have made the purchase if the representations had not been made. There is no error in this holding. The fact that Buchanan believed that he had a good title to the land when he sold it and when he made the deed to Burnett was unimportant, if in fact Burnett believed the representations to be true and relied upon them, making the purchase upon the faith of the statements made by Buchanan. Mitchell v. Zimmerman, 4 Tex. 81, 51 Am. Dec. 717.

"It is also urged that Burnett had in his possession an abstract of title which showed the defect in Buchanan's title, and that it was his duty to inform himself of the title, as he had the means of so doing. Burnett was under no duty to his vendor to investigate the truth or falsity of statements and representations made to him in connection with the title. Labbe v. Corbett, 69 Tex. 509, 6 S. W. 808. In the case cited the court lays down the rule in the following quotation from another authority: 'When once it is established that there has been any fraudulent misrepresentation, * * * by

which a person has been induced to enter into a contract, it is no answer to his claim to be relieved from it to tell him that he might have known the truth by further inquiry. He has a right to retort upon his objector: You, at least, who have stated what is untrue * * * for the purpose of drawing me into a contract, cannot accuse me of want of caution, because I relied implicitly upon your fairness and honesty.' * * * Burnett having purchased the land and paid the consideration therefor, relying upon the representations of Buchanan as to the title, and having no notice of their falsity, was entitled to be restored to his former state upon surrendering, or offering to surrender, what he had received from Buchanan in the transaction."

In Allen v. Exchange Nat. Bank, 21 Tex. Civ. App. 450, 52 S. W. 575 (writ of error refused), Justice Stephens for the Second district used this language, apt to the question there decided:

"It does not lie in the mouth of one authorizing another by affirmative conduct to deceive by suppressing the truth to urge that the one so deceived should not have believed the false representation, but should have inquired, and found out the truth. In other words, as T. F. Allen had authorized T. R. Allen to represent to appellee bank that T. R. Allen was the owner of the land, and to suppress the truth of T. F. Allen's title, it was the same as if T. F. Allen had done it himself—'Qui facit per alium facit per se'—and certainly he would not be heard to say to appellee bank, 'You ought not to have believed me, but should have inquired, and found out the truth.'"

The opinion in that case also contains an apt quotation from Pomeroy on Equity, vol. 2, § 810:

"If the real owner resorts to any affirmative acts or words, or makes any representation, it would be in the highest degree inequitable to permit him to say that the other party, who had relied on his conduct, and had been misled thereby, might have ascertained the falsity of his representations."

[5, 6] It is thus seen the situation here presents, not a case to be controlled by the principles applicable to negligence cases, but rather one governed by the principle that one making to another a false representation, upon which that other relies and acts to his prejudice, is estopped to plead that the other was negligent in relying upon his statement. It is a question of reliance, which question in turn is affected, not by negligence in the sense of exercising ordinary care to discover its falsity but by notice, if any, as disputing the alleged reliance. Of course, estoppel may be, and often is, predicated on negligence, but even then it is a question of the other's reliance, as affected by notice.

Upon the verdict of the jury as returned, the trial court properly entered judgment for the plaintiffs.

We therefore recommend that the judgment of the Court of Civil Appeals, reversing

and remanding this cause, be reversed, and that the judgment of the trial court be in all respects affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed, as recommended by the Commission of Appeals.