## HOME OWNERS' LOAN CORPORATION v. NETTERVILLE et ux.

No. 3224.

Court of Civil Appeals of Texas. Beaumont.

Dec. 2, 1937.

Rehearing Denied Dec. 8, 1937.

Lipscomb & Lipscomb, of Beaumont, F. A. Stamper, of Houston, W. T. Kenna, of Beaumont, and James I. Perkins, of Houston, for appellant.

W. S. Nichols, of Beaumont, and Geo. E. Holland, of Henderson, for appellee.

WALKER, Chief Justice.

On the 10th day of October, 1925, J. S. Edwards and others deeded to O. B. Netterville a triangular tract of 1.02 acres of land, fronting 332 feet on Pine Burr boulevard in the city of Beaumont; the N. W. line was 427 feet long, and the third line 276 feet. This land was purchased jointly by O. B. Netterville and his father, V. B. Netterville, which fact was known to the grantors. The consideration was $80 in cash paid by V. B. Netterville, and the balance, $320 in a vendor's lien note payable in monthly installments, was paid jointly by the two purchasers. This property was bought by the Nettervilles for homestead purposes. Immediately after the purchase V. B. Netterville built a house about the middle of the 332-foot line, facing the boulevard, which he and his wife have continuously occupied as their home since that date. On the 19th day of April, 1926, V. B. Netterville entered into a written contract with O. B. Netterville to build him a house on the above-described property, reserving a lien against all the property to secure him in the costs of the improvements; on that same day V. B. Netterville assigned this lien to A. L. Carter Lumber Company. That lien was discharged by O. B. Netterville and released by the Carter Lumber Company on the 28th day of November, 1932. In taking the assignment of this lien the Carter Lumber Company had knowledge of the claim of V. B. Netterville to a half interest in the property, and that he was occupying and using his half as a home.

In the fall of 1929, V. B. Netterville asked the Carter Lumber Company to release from its lien held against O. B. Netterville enough of the property off the north end of the tract for a home for C. K. Netterville, who was planning to get married; at that time the legal title to all the property was in O. B. Netterville. Instead of obeying the request of V. B. Netterville, the Carter Lumber Company had O. B. Netterville, on the 29th day of December, 1929, deed to C. K. Netterville all the north half of the lot, retaining in O. B. Netterville's name only 112 feet off the south end, facing the boulevard. Neither C. K. Netterville nor V. B. Netterville saw this deed at the time it was executed, nor did they know that it conveyed all of the half interest, and at the time it was executed V. B. Netterville did not know that O. B. Netterville had conveyed to C. K. Netterville his home—V. B. thought and assumed that O. B. had conveyed to C. K. only enough off the north end for a home. On the day of the execution of that deed V. B. Netterville entered into a contract with his son, C. K. Netterville, to build him a house on the property deeded to him; and to secure his father in the cost C. K. executed to him a lien against all the property deeded to him by O. B., which, of course, included the home of V. B. Netterville. On that same day V. B. Netterville assigned this lien to the Carter Lumber Company; the house was built as per contract and delivered to C. K. Netterville, who, having married on the 4th day of January, 1930, moved into the house as his home. He defaulted in his payments on his lien; the Carter Lumber Company foreclosed its lien by a trustee sale on the 6th day of June, 1933. On the day of sale, for the first time V. B. Netterville learned that his home was included in the deed from O. B. Netterville to C. K. Netterville, and in the lien taken by him against C. K. Netterville and assigned by him to the Carter Lumber Company. In explaining his want of knowledge of this fact, V. B. Netterville testified that he did many contracting jobs through the Carter Lumber Company; that he never read the instruments prepared for his signature but signed whatever the Carter Lumber Company presented to him; and that in reserving the lien against his son and assigning it to the Carter Lumber Company, he did not know that it included his home but signed the papers placed before him, believing that the Carter Lumber Company had obeyed his instructions and had had O. B. convey to C. K. only the north end of the lot.

The Carter Lumber Company held the title to the property purchased under the trustee sale until February 1, 1934, when it reconveyed the property—all the property against which it had foreclosed its lien—to C. K. Netterville and took in payment a vendor's lien note against all the property

thus conveyed to secure it in the unpaid balance of its original debt. On the 16th day of April, 1934, Carter Lumber Company conveyed this note and lien and all its right title and interest in the property to Home Owners' Loan Corporation, who took a new note for the amount of the debt with a new deed of trusts against the property as security; C. K. Netterville, agreed in the transfer that H. O. L. C. was subrogated to all the rights, titles, liens, and equities of the Carter Lumber Company.

From the date of its contract with O. B. Netterville in 1926, to the transfer of its lien to H. O. L. C., Carter Lumber Company knew all the facts as detailed above.

When H. O. L. C. took the assignment of the lien from Carter Lumber Company, its attorneys examined the title to the property, and found on record all the written instruments set out above. Its inspector went upon the property but inspected only the house of C. K. Netterville and its improvements. At the time of this inspection V. B. Netterville and O. B. Netterville were occupying their homes with their families, but neither of their houses was inspected and no inquiry was made of the Nettervilles nor, as far as the record shows, of anyone else as to the claims of O. B. Netterville and V. B. Netterville. No fence was ever built separating the houses from each other, but there was a drainage ditch separating the lot claimed by C. K. from the lot claimed by his father, and a drainage ditch separating the lot claimed by O. B. from the lot claimed by his father. In fact, each of the Nettervilles claimed that his particular lot was bounded and defined by these drainage ditches.

C. K. Netterville defaulted in his payments to H. O. L. C. On the 21st day of September, 1936, V. B. Netterville, joined by his wife, instituted suit in trespass to try title in the district court of Jefferson county against H. O. L. C. and O. B. Netterville to recover the title and possession of the tract of land deeded to C. K. by O. B. on the 27th day of December, 1929. O. B. filed no answer. H. O. L. C. answered by pleas of demurrers, not guilty, etc., and by way of cross-action against V. B. Netterville and his wife, and C. K. Netterville and his wife as cross-defendants, pleading the lien assigned to it by Carter Lumber Company, and praying for judgment against C. K. Netterville for the amount of its debt, and for foreclosure of its lien on all the property against all the cross-defendants.

No answer was filed by the cross-defendants to this cross-action.

On trial to the court without a jury judgment was rendered on the 4th day of February, 1937, in favor of V. B. Netterville and his wife against H. O. L. C. for that part of the original lot lying north of the part reserved by O. B. Netterville and facing 50 feet on the boulevard, and in favor of H. O. L. C. against C. K. Netterville for the amount of its lien, and foreclosing the lien against all the cross-defendants on that part of the original lot lying north of the V. B. Netterville 50 feet; the judgment of the court foreclosed the lien against the frontage of 170 feet on the north end of the original lot, that part of the original lot claimed by C. K. H. O. L. C. has duly prosecuted its appeal to this court, praying that the judgment in its favor foreclosing its lien on the 170 feet be affirmed, and that the judgment in favor of V. B. Netterville be reversed and that judgment be rendered by us foreclosing its lien against the V. B. Netterville 50 feet. Appellant's brief invokes the following legal propositions:

## Opinion.

■ On the undisputed evidence, V. B. Netterville and his wife, appellees, owned the equitable title to the 50-foot frontage awarded them by the judgment of the lower court, which they had occupied openly and notoriously, claiming it as their home since 1925; so, this property, as against their claim of homestead, could be encumbered only in the manner provided by the Constitution (article 16, § 50). Since appellant's lien was not created in the manner provided by the Constitution—Mrs. Netterville did not join in its execution—it was void. King v. Plainview Nat. Farm Loan Ass'n (Tex.Civ.App.) 100 S.W.2d 434.

■ Though appellee held the equitable title to their home, the legal title was in C. K. Netterville. Edwards v. Brown, 68 Tex. 329, 332, 4 S.W. 380, 5 S.W. 87; Patty v. Middleton, 82 Tex. 586, 590, 17 S.W. 909; Teagarden v. R. B. Godley Lumber Company, 105 Tex. 616, 154 S.W. 973; Revised Texas Statutes of 1925, arts. 1288, 1289.

■ If appellant purchased its lien in good faith, on a valuable consideration, and without notice of appellees' title, or without notice of facts putting it upon inquiry, it was entitled to protection. Patty v. Middleton, 82 Tex. 586, 17 S.W. 909; Anderson v. Gazaway (Tex.Civ.App.) 80 S.W.2d 481.

■ Appellees, holding only the equitable title, rested under the burden of showing that appellant (a) did not acquire its title or lien in good faith, or (b) did not pay a valuable consideration therefor, or (c) that it had notice of their equitable claim at the time it acquired its lien, or knowledge of facts sufficient to put it upon inquiry. Elliott v. Wallace (Tex.Civ. App.) 42 S.W.2d 1058; Id. (Tex.Com. App.) 59 S.W.2d 109; Anderson v. Gazaway, supra; Patty v. Middleton, supra.

■ Appellant paid Carter Lumber Company for its note, lien, and assignment of interest the sum of $2,321, practically the full amount of its debt against C. K. Netterville; this payment constituted a valuable consideration for the assignment of the note and lien. Though some of the installments on the note were past-due when appellant took its assignment, C. K. Netterville and his wife executed to appellant a new note and lien in extension or renewal of the Carter Lumber Company note; this extension and renewal of the note and lien put appellant in the position of an assignee of the note before maturity. Brooks v. Asherton State Bank (Tex.Civ.App.) 278 S.W. 473; First National Bank v. Todd (Tex.Com.App.) 231 S.W. 322; Commercial State Bank v. Blackwell (Tex.Civ.App.) 61 S.W.2d 563; Adkins-Polk Co. v. Rhodes (Tex.Com. App.) 24 S.W.2d 351. It must also be said that appellant had no actual notice of appellees' equitable title, and that it bought its lien believing that the facts reflected by the abstract of title were true. The abstract contained affirmative declarations by V. B. Netterville that the lot awarded to him by the judgment of the lower court was the property of C. K. Netterville.

■■ But it is a general rule, subject to certain exceptions, that, where a man and his wife are in actual possession of property, using it as their home, representations made by him orally or in writing will not defeat their claim of homestead. Farmers' State Bank v. Farmer (Tex.Civ.App.) 157 S.W. 283; Black v. Boyer (Tex.Civ.App.) 21 S.W.2d 1094; McDowell v. Northcross (Tex.Civ.App.) 162 S.W. 13; Steves v. Smith, 49 Tex. Civ.App. 126, 107 S.W. 141. Appellant does not controvert the general rule but insists that appellees' possession of their homestead was not of that exclusive, unambiguous, and unequivocal nature to give

it notice of their claim; it invokes the exception to the general rule that, in order to charge an encumbrancer of a homestead with notice of an equitable interest, the possession of the claimant must be exclusive, unambiguous, and unequivocal in its nature. The authorities cited by appellant sustain its proposition, as an abstract principle of law; but, on their facts, these cases are distinguishable from the case at bar. In Johnson v. Bingham (Tex. Civ.App.) 251 S.W. 529, a negro family resided upon property deeded them by a white man, a part of a larger tract lived upon and occupied by the grantor who held the legal title. The court held that the possession of the negroes indicated that they were holding the land only as tenants and servants of the grantor and that their possession was subservient, and merely incidental, to the possession of the grantor. In Strong v. Strong (Tex.Civ. App.) 66 S.W.2d 751, the holders of the equitable title—owning the interest inherited from their deceased mother—were living on the land as members of their father's family; he had married a second wife and held the legal title. In Derrett v. Britton, 35 Tex.Civ.App. 485, 80 S.W. 562, the claimant of the secret title lived as a boarder on the land, in the house of the family holding the legal title. In Puckett v. Reed, 3 Tex.Civ.App. 350, 22 S.W. 515, a son, living with his father and mother on land owned by him, deeded it to his mother; she failed to record her deed; subsequently the son created a lien on the land in favor of an innocent third party. Scott v. Carnes, 183 Ark. 650, 37 S.W.2d 876, 878, a white man, owning the land and living on it, deeded a half interest in it to a negro woman who continued in joint possession with him. This deed was never recorded. After the execution of the deed, the grantor created a lien on the land in favor of an innocent third party. On the ground that the possession of the negro woman was subservient to that of the white man, and on the further ground that the negro woman held only an undivided interest—"the parties owned the land as tenants in common, and both occupied the land"—the court held that the possession of the negro woman was referable to the possession of the owner of the legal title. But such are not the facts in the case at bar. Appellees did not claim an undivided interest but a separate, distinct interest, bounded on each side by a drainage ditch; ap-

pellees' possession was not subservient to the improvements of his son, but constituted a distinct, separate entity. The relation between father and son does not support an inference that the father was a servant to his son. The nature of the transactions in the cases cited naturally included all the property in controversy; in the case at bar, the face of the record notified appellant that its lien was created for the purpose of building only one house and not two homes; the land was a mere incident of the lien, the main security was the house. There was not in the abstract an inference that the property covered two homes or that it was the intent of the parties to create a lien against two homes to secure the cost of construction of one home. The inspector, when he visited the premises, was given notice that the premises were covered by two houses, independent improvements. When appellant made the inspection of the property in controversy, it was given notice of facts which, in our judgment, were sufficient to require it to make inquiry of appellees of the nature of their possession. Had the inquiry been made, appellant would have learned the nature of appellees' claim.

Appellant's second point is that appellees were estopped as a matter of law by the recitations in the recorded title to assert their homestead interest. True, Mrs. V. B. Netterville was not a party to these instruments, but the acts of her husband, if sufficient as against him, would also create an estoppel against her. First State Bank of Carbon v. Thurman (Tex. Com.App.) 12 S.W.2d 146. Where a party clothes another with apparent ownership and authority to deal with real estate and permits instruments having that effect to be placed of record, the general rule is that he will be estopped to assert an equitable title against an innocent encumbrancer, who acted in reliance upon the record. Eylar v. Eylar, 60 Tex. 315; National Bond & Mortgage Co. v. Davis (Tex.Com.App.) 60 S.W.2d 429. But appellant did not put full faith and credit in the facts reflected by the abstract. It sent an inspector upon the ground, and was advised of the actual fact of appellees' occupancy. In taking the assignment from Carter Lumber Company, it was the intent of appellant to hold a lien against only one improvement; in taking the assignment, it knew that the lien called for only one improvement on this property.

When its inspector was on the ground he inspected only one improvement and made no inquiry as to the second house which was included in the filed notes of the lien. From this fact we draw the inference that the inspector did not know the lien covered both houses. The facts permit the inference that, in accepting the assignment of the lien, appellant looked only to the C. K. Netterville home and the land appurtenant thereto as security for its investment.

The court's conclusion that appellees were not estopped to assert their equitable title as a defense against appellant has support in the evidence.

The judgment of the lower court should be in all things affirmed, and it is accordingly so ordered.