HOME OWNERS' LOAN CORPORATION V. V. B. NETTERVILLE ET AL.

No. 7366. Decided October 11, 1939.
(132 S. W., 2d Series, 93.)

*Lipscomp & Lipscomb* and *Samuel C. Lipscomb,* all of Beaumont, *James I. Perkins* and *F. A. Stamper,* both of Houston, for plaintiffs in error.

The Court of Civil Appeals erred in holding that the liens of plaintiff in error were inferior to the equitable title of defendants in error, and in refusing to foreclose same as against defendants in error, because the undisputed evidence established that such liens were acquired by it from and under the holder of the legal and record title to the land in suit, in good faith, for value, and without knowledge or notice of the equitable title of defendants in error. Johnson v. Bingham, 265 S W. 130;

Edwards v. Brown, 68 Texas 329, 4 S. W. 380, 5 S. W. 87; Graves v. Kinney, 95 Texas 210, 66 S. W. 293.

*Geo. E. Holland* and *E. A. Holland,* both of Beaumont, for defendants in error.

The lien of plaintiff in error created in its favor by the owner of the legal record title is void as to defendants in error to that portion of the land covered thereby which was at the time actually owned by and was actually in the possession of the defendant in error, holding and owning the equitable title thereto and occupying the same as their family residence and homestead and who were not parties thereto. Grissom v. Anderson, 48 S. W (2d) 809; Collier v. Valley Bldg. & Loan Assn., 62 S. W. (2d) 82.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

On October 10, 1925, J. S. Edwards and others executed to O. B. Netterville deed to a triangular tract of land fronting 332 feet on Pine Burr Boulevard in the City of Beaumont, Texas. Said tract contained 1.02 acres, and when convenient will be referred to as one acre. The deed recited a cash consideration of $80.00 paid by O. B. Netterville, and the execution of one note for $320.00 by said O. B. Netterville, payable in monthly installments of $8.00 each. This deed was filed for record October 15, 1925. Shortly after said deed was executed, V. B. Netterville, the father of O. B. Netterville, built a house on said tract of land near the middle of the 332 foot line, and facing the Boulevard. V. B. Netterville and wife, upon the completion of said house, moved into same and have since occupied same as their home.

On April 19, 1926, O. B. Netterville, in whose name the record title to said one acre tract stood, desiring to build a home for himself upon said land, entered into a contract with his father, V. B. Netterville, for the construction of said house. This contract created a mechanic's, materialman's and contractor's lien upon the whole of said tract in favor of V. B. Netterville. O. B. Netterville executed one note for $1580.00, payable to V. B. Netterville in monthly installments of $24.00 each. This note included a balance of $282.36 of the original purchase money note. A. L. Carter Lumber Company furnished the lumber and materials for the construction of the house, and on the 19th day of April, 1926, V. B. Netterville assigned to said company said note, as well as the mechanic's, material-

man's and contractor's lien securing same. This note was finally paid in full, and on November 28, 1932, the lumber company released said lien.

Prior to December 27, 1929, C. K. Netterville, a son of V. B. Netterville, and brother of O. B. Netterville, was living with his father on the land in question. Being desirous of building a home thereon, at the request of his father and mother, who desired to make a gift of a part of said land to the said C. K. Netterville, O. B. Netterville executed to the said C. K. Netterville a deed to the western portion of said one acre tract, leaving a tract fronting 112 feet on said Boulevard standing in the name of the said O. B. Netterville. The O. B. Netterville home was upon this tract. The portion conveyed by O. B. Netterville and wife to C. K. Netterville included the house in which V. B. Netterville and wife resided. The tract thus conveyed was approximately one half of the original lot, and when convenient will hereinafter be referred to as the one half acre tract. This deed was filed for record December 29, 1929.

On December 27, 1929, C. K. Netterville, who was then a single man, entered into a contract with his father, V. B. Netterville, to construct a dwelling house upon said one half acre tract, and said contract created a mechanic's, materialman's and contractor's lien in favor of said V. B. Netterville upon all of said tract conveyed by O. B. Netterville to C. K. Netterville, including the house in which the said V. B. Netterville resided. This lien was given to secure payment of one note for $1860.00, payable in monthly installments of $24.00 each, executed by the said C. K. Netterville to the said V. B. Netterville. The A. L. Carter Lumber Company furnished the lumber and materials used in the construction of this house, and on the 27th day of December, 1929, V. B. Netterville assigned said note and said lien to said lumber company. For the better securing of said note the said C. K. Netterville, on the same date, executed deed of trust lien in favor of said lumber company, naming C. E. Locke as trustee. The house was built for C. K. Netterville, and he moved into same in January, 1930, having in the meantime married. This house was located a short distance west of the house occupied by V. B. Netterville and wife. C. K. Netterville defaulted in payments on his note, and on June 6, 1933, the trustee, at the request of A. L. Carter Lumber Company, made sale of the land covered by the deed of trust, and the lumber company became the purchaser. This sale included the land where the house occupied by V. B. Netterville and wife was located. It does not appear that any one questioned the regularity of this sale. Both V. B.

Netterville and wife and C. K. Netterville and wife continued to reside upon the land, and it is not shown what agreement, if any, was made between them and the A. L. Carter Lumber Company.

The lumber company continued to hold title to this property until Febraury 1, 1934. It appears that the company was willing to reconvey the property to C. K. Netterville for the amount of the indebtedness which had previously existed against it, provided arrangements could be made with the Home Owners' Loan Corporation to take up the purchase money note by substitution of its bonds for substantially the full amount of said indebtedness. Upon application made by C. K. Netterville, the Home Owners' Loan Corporation expressed its willingness to make the loan. Thereupon A. L. Carter Lumber Company executed to C. K. Netterville a deed to the property, reserving a vendor's lien to secure the payment of one note for $2293.15, payable in monthly installments of $25.00 each. This deed was dated February 1, 1934. On April 10, 1934, the lumber company, for a consideration of $2321.00 in bonds of the Home Owners' Loan Corporation, assigned the note and lien to said corporation. To further secure the said sum, C. K. Netterville and wife executed a deed of trust in favor of the corporation. In making this loan the Home Owners' Loan Corporation required the furnishing of an abstract of title, and same was examined by its attorney. It is undisputed that said attorney relied upon the records as disclosed by said abstract, and from such records concluded that the title to the property in question was good in C. K. Netterville. There is some proof that the company sent an inspector to view the property, and that he inspected only the house where C. K. Netterville and wife resided, but made no inspection of the house where V. B. Netterville and wife lived. It is further undisputed that there has never been any subdivision of the one half acre tract as between C. K. Netterville and V. B. Netterville, but of course the deed of conveyance from O. B. Netterville to C. K. Netterville had the effect of segregating the O. B. Netterville portion from the balance of the tract. There was no fence, hedge or other visibly marked division line between the improvements of C. K. Netterville and V. B. Netterville.

The present suit was instituted in the District Court of Jefferson County by V. B. Netterville and wife as plaintiffs, and they will be so designated here. It was a simple action of trespass to try title, and by same plaintiffs sought to recover title and possession of the said one half acre tract as described in the deed of O. B. Netterville to C. K. Netterville. The Home

Owners' Loan Corporation, which will be designated defandant, answered by general demurrer, general denial and plea of not guilty, as well as by alleging the various transactions herein mentioned. By way of cross action it sought to foreclose as against C. K. Netterville and wife and V. B. Netterville and wife the vendor's lien and deed of trust lien hereinbefore mentioned.

In their suit of trespass to try title plaintiffs relied solely upon an equitable title. It is their claim that when the land was purchased by O. B. Netterville in 1924 it was bought for the joint benefit of O. B. Netterville and V. B. Netterville. It is further claimed (all of which was shown by parol evidence) that V. B. Netterville paid all or a part of the cash payment of $80.00 and made some payments on the monthly installments represented by the note of O. B. Netterville to A. L. Carter Lumber Company, which included a part of the original purchase money for the one acre tract. The approximate amount of purchase money paid by V. B. Netterville was wholly uncertain. Although the record title at all times has stood in the names of O. B. Netterville and C. K. Netterville, yet plaintiffs claim that their possession of the land was sufficient to put the Home Owners' Loan Corporation upon inquiry, which, if pursued, would have disclosed their equitable interest arising by virtue of payment of a part of the purchase money. While plaintiffs sued for the entire one half acre tract, and had no pleading whatever by which any less interest could be set aside to them, nevertheless the trial court, of its own accord, set aside to plaintiffs a strip of land fronting 50 feet on Pine Burr Boulevard, adjoining the portion claimed by O. B. Netterville, and rendered judgment for plaintiffs for that strip. It was upon this strip that the house in which they resided was located. Upon default by C. K. Netterville and wife, judgment was rendered in favor of the Home Owners' Loan Corportation foreclosing its lien as against them on the balance of the one half acre tract. This judgment of the trial court was affirmed by the Court of Civil Appeals. 110 S. W. (2d) 628.

When carefully analyzed it will be seen that the holding of the Court of Civil Appeals is to the effect that possession of the land by V. B. Netterville and wife was at all times sufficient to give notice of their equitable interest, and thus prevent Home Owners' Loan Corporation becoming an innocent purchaser for value, and also prevent it from claiming an estoppel. We think the Court of Civil Appeals erred in holding that plaintiffs were not estopped, and are of the opinion that the matter of possession passes out of the case.

■ It is settled that if a homestead claim be attached to only an equitable community interest, and if the husband do something which will estop him from asserting said equitable interest as against an innocent purchaser, or lienholder, the homestead claim collapses as to the wife as well as the husband. First State Bank of Carbon v. Thurman, 12 S. W. (2d) 146; Ranney v. Miller, 51 Texas 263.

■ It is further settled that if the husband deal with land in such way (his acts being evidenced by the records) as to create a belief that he has no secret equitable interest in same, and another is misled thereby to his detriment, he is estopped to say that his possession was sufficient to incite inquiry concerning a homestead claim. First State Bank of Carbon v. Thurman, supra; Allen v. Exchange National Bank, 52 S. W. 575 (Writ ref.); New England Safe Deposit & Trust Co. v. Harrell, 39 S. W. 142 (Writ ref.); Sparks v. Texas Loan Agency, 19 S. W. 256; Ziegler v. Federal Land Bank of Houston, 86 S. W. (2d) 864.

It seems to us that the acts of V. B. Netterville, as disclosed by the records, unquestionably and unequivocally declare that he had no equitable interest in this land on the theory of having paid a part of the purchase money. In the first place he permitted the deed to be made to O. B. Netterville, with recital that O. B. Netterville had paid the cash payment of $80.00 and had executed the vendor's lien note for $320.00. O. B. Netterville did in fact execute said note individually. He then allowed O. B. Netterville to execute mechanic's, materialman's and contractor's lien upon the whole one acre tract, actively participating in the creating of said lien by taking same in his own name and assigning it to the lumber company, thus impliedly, at least, validating and guaranteeing the integrity of such lien. It is undisputed that he and his wife, in order to make a gift to C. K. Netterville of a part of said land, requested O. B. Netterville to execute deed to said C. K. Netterville. Such deed was made with specific description, which included the alleged homestead, and was placed of record. Certainly, in absence of a homestead claim, this would have passed the alleged equitable claim of V. B. Netterville in the whole tract thus conveyed. Assuming that the homestead could not in this way be conveyed, this does not detract from the significance of the transaction as a public declaration on the part of plaintiff V. B. Netterville that he in fact claimed no equitable interest in the land. He was undoubtedly charged with knowledge of the contents of such conveyance. None of the

instruments have been attacked because of fraud, accident or mistake. Plaintiff V. B. Netterville then allowed C. K. Netterville to place a lien upon the land in which he now claims an interest. This was not only done with his knowledge and consent but with his active participation, in that he again took the mechanic's, materialman's and contractor's lien in his own name and assigned it to the lumber company, thus vouching for its validity and genuineness. He then stood by and allowed a public sale to be made of all the property under the deed of trust. Then without protest he allowed the son to repurchase the land, execute vendor's lien upon same to secure payment of the purchase money, and knowingly allowed such lien to pass into the hands of the Home Owners' Loan Corporation unchallenged. In light of these acts, on the face of the record, plaintiffs are in no position to say that defendants should not have believed and relied upon all these record declarations, but should have made inquiry to ascertain whether or not they (plaintiffs) had paid some part of the original purchase money for the land. It must be assumed that even in case of inquiry, the verbal statements of plaintiff V. B. Netterville would have been in accord with his written acts, as reflected by the record. While we might make appropriate quotation from various cases, yet we think the language of the court in the case of Allen v. Exchange National Bank, supra, so aptly fits the situation here presented that we need not quote other than a part of what is said in that case. There, T. R. Allen was record owner of certain land. He executed deed to his son T. F. Allen, who went into possession and established a homestead thereon. The deed was not recorded. Later, T. F. Allen requested T. R. Allen to execute deed of trust on said land, which was done. Notwithstanding possession of the land by T. F. Allen he was held to be estopped to question the validity of the lien. Among other things the court said:

"Our conclusion of law is that T. F. Allen was estopped from disputing the validity of the mortgage. Every man is presumed to intend the natural consequences of his own conduct. In consenting for his father to mortgage the land, T. F. Allen consented for his father to do whatever was essential thereto, towit, to represent himself as the owner, which he, in effect did when he executed the mortgage. The consent given his father to mortgage the land, under the circumstances disclosed by the testimony, was equivalent to an agreement with his father to withhold his own deed from record to enable him to do it. He thus, in effect, and, as must be inferred, intentionally, held his

father out as the owner, with the expectation that another would deal with him on the faith of such apparent ownership. Now what was contemplated has actually taken place, and the appellee bank has changed its position for the worse, it does not lie in the mouth of T. F. Allen to deny that his father was the owner. It matters not that the bank was ignorant of what had passed between the Allens. But for the consent of the son that the father might represent himself as the owner, it is to be inferred that the father would not have done so. It was that consent, then, that caused the father to deceive the bank. Nor does it matter that, but for the consent and consequent representation of title in T. R. Allen, the possession of T. F. Allen would have given notice of his title. He waived that by consenting that the land might be mortgaged as the property of T. R. Allen. Besides, possession under an unrecorded deed is held to be equivalent to registration only because it should provoke such inquiry as would lead to a knowledge of the unrecorded conveyance; *but it does not lie in the mouth of one authorizing another by affirmative conduct to deceive by suppressing the truth to urge that the one so deceived should not have believed the false representation, but should have inquired, and found out the truth.* In other words, as T. F. Allen had authorized T. R. Allen to represent to appellee bank that T. R. Allen was the owner of the land, and to suppress the truth of T. F. Allen's title, it was the same as if T. F. Allen had done it himself,—'Qui facit per alium facit per se,'—and certainly he would not be heard to say to appellee bank, 'You ought not to have believed me, but should have inquired, and found out the truth.' As said by Mr. Pomeroy in his admirable work on Equity (volume 2, sec. 810) *'If the real owner resorts to any affirmative acts or words, or makes any representation, it would be in the highest degree inequitable to permit him to say that the other party, who had relied on his conduct, and had been misled thereby, might have ascertained the falsity of his representations.'* This case then, comes within the following quotation from 1 Jones, Mortg. sec. 683: 'And so, if an owner of land represents to a creditor that it belongs to another, and induces such creditor to take a mortgage from that person, and to extend the time of payment of the debt, he is estopped to claim the land as against the lien of the mortgage.' " (Emphasis ours.)

We need not decide whether or not the possession by plaintiffs was presumably subordinate to that of C. K. Netterville, in whose name the record title reposed, and therefore was not

sufficient within itself to give notice of a secret equitable interest. We certainly do not approve the holding of the Court of Civil Appeals in this regard. The acts of V. B. Netterville, as disclosed by the records, were such as to nullify the effect of possession as regards the question of notice. The homestead rested solely upon an equitable claim, dependent upon a resulting trust. The claim of the wife was swept away by the acts of the husband. The case of First State Bank of Carbon v. Thurman, supra, is in principle decisive of this case.

The judgment of the Court of Civil Appeals and of the district court are reversed, and the cause is remanded with instructions to the trial court to enter judgment in favor of the plaintiff in error, Home Owners' Loan Corporation, that plaintiffs take nothing and that it have judgment in its favor for its debt and foreclosure of its lien against the entire property described in its deed of trust.

Opinion adopted by the Supreme Court October 11, 1939.