## FEDERAL LIFE INS. CO. v. MARTIN et ux.

### No. 5841.

Court of Civil Appeals of Texas. Texarkana.

Oct. 23, 1941.

Rehearing Denied Dec. 18, 1941.

See, also, Tex.Civ.App., 116 S.W.2d 912.

McGown, McGown, Godfrey & Logan and B. E. Godfrey, all of Fort Worth, for appellant.

R. T. Wilkinson, Sr., of Mt. Vernon, R. T. Wilkinson, Jr., of Dallas, and J. A. Ward, of Mt. Pleasant, for appellees.

HALL, Justice.

The statement made by appellant in its brief is admitted by appellees to be correct, and same, summarized, is substantially as follows: Appellees, W. R. Martin and wife, Willie Lee Martin, instituted this suit against the Reynolds Mortgage Company and the Federal Life Insurance Company in the Franklin County District Court for title and possession of an undivided ½ interest in 230 acres of land situated in Franklin County. They alleged that they were the owners of an undivided ½ interest in the land in 1918 by virtue of a verbal conveyance or partnership agreement between W. R. Martin and his father, C. S. Martin. It was alleged also that the whole 230 acres was conveyed by C. S. Martin to one F. J. Joyce, but that F. J. Joyce held an undivided ½ interest therein in trust for appellees; that appellees had lived upon this property and were living upon same, claiming it as their homestead, at the time F. J. Joyce gave a deed of trust covering same and executed certain notes in favor of the Reynolds Mortgage Company; that Reynolds Mortgage Company was charged with the homestead rights of appellees by virtue of their possession. It was alleged further by appellees that shortly after the execution and delivery of the deed from C. S. Martin to F. J. Joyce, said Joyce entered into a contract with appellee W. R. Martin, by the terms of which W. R. Martin paid to F. J. Joyce the sum of $13,250 in cash and assumed the payment of ½ of a $2,500 lien against said land in favor of one Wm. McGeorge and son; that by the terms of said contract Joyce obligated himself to execute a deed to appellee W. R.

Martin, upon demand by him, conveying an undivided ½ interest in this property with full covenants of general warranty upon payment by the said W. R. Martin of ½ the $2,500 Wm. McGeorge and son indebtedness; that this contract had been executed by Joyce and delivered to appellee W. R. Martin prior to the time of the execution of the note and deed of trust by Joyce to the Reynolds Mortgage Company; that on January 11, 1929, Joyce conveyed the entire tract of land to appellees, they assuming the indebtedness originally due Reynolds Mortgage Company, then held by Federal Life Insurance Company; that, while the deed of trust covers the whole of said land, in truth and in fact at the time of its execution and delivery, the said Joyce had title to only an undivided ½ interest therein; that appellees' homestead claim to an undivided ½ interest in said land at the time of making the deed of trust was either known to the Reynolds Mortgage Company, or by exercise of ordinary diligence could have been ascertained by it; on February 20, 1932, appellees executed a deed of trust covering this entire tract of land in favor of Federal Life Insurance Company to secure the balance due on the Joyce note to Reynolds Mortgage Company which was assumed by them in 1929. It was alleged that this last deed of trust was void because the property covered by same was the homestead of appellees. It was alleged further by appellees that appellee W. R. Martin was adjudged a bankrupt in 1923; that his wife, appellee Willie Lee Martin, was not a party to said bankruptcy proceedings, and that the property involved herein was not listed as exempt by appellee W. R. Martin; that same was sold to the Federal Life Insurance Company by the Trustee in Bankruptcy in liquidation of its claim against appellees secured by said deed of trust; and that such deed was void because the wife was not bound by said bankruptcy decree. It was alleged further by appellees that the Federal Life Insurance Company had obtained a judgment in a forcible entry and detainer suit in justice's court of Franklin County, and an injunction was sought against the sheriff to prevent the execution of said justice's court judgment. Appellees sought an adjudication of their title to an undivided ½ interest in the property and removal of the cloud cast thereon by the trustee's deed and the notes and deed of trust executed by Joyce to the Reynolds Mortgage Company, later assigned to appellant.

The Federal Life Insurance Company, the only appellant herein (and which will be hereafter referred to simply as appellant), answered by a plea of not guilty, and by cross action alleging that the property in question was, prior to the date of the conveyance of same by C. S. Martin and wife to F. J. Joyce, the homestead of C. S. Martin; that there was no written conveyance from C. S. Martin to appellees, neither was there an acknowledgment of any instrument in writing by the wife of C. S. Martin as required in the conveyance of homesteads; that appellee W. R. Martin could not acquire any interest in this property by verbal conveyance; that C. S. Martin and wife in fact never did convey the property to appellees, but, on the contrary, conveyed said property on September 10, 1918, to F. J. Joyce by warranty deed in the form required by law to convey homestead property, which deed was duly and properly recorded in Deed Records of Franklin County, Texas, shortly after its execution and delivery; that the Reynolds Mortgage Company was a holder in good faith for value without notice of any claim of appellees; that if any title was retained in the deed from C. S. Martin and wife to F. J. Joyce, it was retained in C. S. Martin and wife and not in appellees for the purpose of preventing certain judgment creditors of appellee W. R. Martin from levying upon said property; that in December 1920, F. J. Joyce informed appellee W. R. Martin of his desire to obtain a loan from Reynolds Mortgage Company and that the said W. R. Martin undertook and did assist Joyce in obtaining said loan. It was alleged further that F. J. Joyce represented himself to the Reynolds Mortgage Company to be the sole owner of said property, which representation was known to appellee W. R. Martin, and W. R. Martin connived, consented and assisted said Joyce to procure said loan; that appellee Willie Lee Martin, wife of W. R. Martin, knew that said loan was being obtained and remained silent, "connived and acquiesced" in the same when she was under duty to speak; that appellee W. R. Martin executed an instrument in writing and delivered same to Reynolds Mortgage Company, stating that appellees were tenants of F. J. Joyce as renters for the current year, and claimed no

other right, title or interest in the premises. It was alleged that the loan was made under such representations of facts and under the existing record title then in Joyce. That on January 23, 1921, Reynolds Mortgage Company for a valuable consideration transferred said note and lien to appellant which it purchased for value without notice of any claim of appellees. Appellant alleged further the transfer of the whole tract of land by Joyce to appellees, the assumption by appellees of the debt due appellant; that appellees were estopped in law to deny the interest of their grantor, Joyce, by the recitations in the instrument under which they held. Appellant also alleged that it purchased, by authority of the bankruptcy court, the entire 240 acres of land from the trustee in bankruptcy in satisfaction of its debt, and it prayed that its title to said land be quieted and decreed valid. Appellant alleged a renewal by appellees on December 19, 1931, of said loan and extension deed of trust and notes, payment by it of certain taxes against this land; and that said debt had not been paid after renewal and extension thereof. In the alternative, appellant sought the foreclosure of certain tax liens, also the establishment of its debt with foreclosure of its deed of trust lien.

Trial was to a jury. At the conclusion of the evidence, the court sustained appellees' motion for an instructed verdict, and upon the verdict so rendered, judgment was entered for appellees for title and possession of an undivided 1/2 interest in said land, and commissioners were appointed to partition same.

The following facts and circumstances are undisputed: Appellees are man and wife. They were married in 1912 and moved immediately to the home of C. S. Martin and wife, located on the land in controversy, where they lived for eight months. They then removed to another place where they lived for five or six years, returning to the home of C. S. Martin and wife in 1918 where they have resided continuously since, claiming same as their homestead. On September 10, 1918, C. S. Martin and wife executed and delivered to F. J. Joyce a deed covering the 240 acres of land, an undivided 1/2 of which is here in controversy, for a recited consideration of $26,500 cash and the assumption of $2500 note due Wm. McGeorge and son. After this transaction C. S. Martin and wife moved off this land, leaving appellees as occupants thereof residing in the old home. On September 11, 1918, F. J. Joyce and appellee W. R. Martin entered into a contract in writing, by the terms of which F. J. Joyce obligated himself to convey to W. R. Martin on demand after payment of the consideration set out below, an undivided 1/2 interest in the 240 acres for a total consideration of $14,500, of which $13,250 was paid in cash and 1/2 of the $2,-500 McGeorge and son note was assumed. This contract was delivered to appellees and by them placed in a bank for safe keeping. It was not placed of record until after this suit was instituted. On December 21, 1920, F. J. Joyce executed and delivered to the Reynolds Mortgage Company his note for $10,000 which was secured by a deed of trust covering the 240 acres of land conveyed to him by C. S. Martin and wife. This note and deed of trust were given for money borrowed from the Reynolds Mortgage Company. Appellee W. R. Martin knew of this loan and consented for Joyce to make it, and signed a statement to the Reynolds Mortgage Company, before the Joyce loan was made, in which he stated that he was occupying the premises as a tenant of Joyce and was paying the usual and customary rent therefor. Martin also executed an appraisal certificate covering this land before the Joyce loan was made. A short time before this loan was made, appellees paid off their remaining indebtedness to Joyce for their 1/2 undivided interest in the 240-acre tract of land, but Joyce did not give them a deed to same until 1929, long after the loan was consummated. This land, therefore, became community property of appellees. Appellee Willie Lee Martin had no part in negotiating the Joyce loan. She made no statement to any one with respect to her occupancy of the premises in controversy or as to her homestead claim thereto. She did nothing whatsoever to mislead any one—she simply occupied the premises as a homestead. She learned of the loan either at the time or shortly after it was made, but her testimony is that she thought the deed of trust covered only Joyce's undivided interest in the 240 acres. On January 25, 1921, Reynolds Mortgage Company assigned the Joyce note and deed of trust lien securing same to appellant. The record does not reflect that either the Reynolds Mortgage Company or appellant had actual knowledge that appellee Willie Lee Martin was claiming this property as her homestead. In January,

1934, the trustee in bankruptcy conveyed the entire 240 acres of land to appellant in satisfaction of its debt. The pertinent parts of the contract of sale are:

"This contract of bargain and sale made and entered into this the 11th day of September A. D. 1918, by and between F. J. Joyce, of Franklin County, Texas, party of the first part, and W. R. Martin, of Franklin County, Texas, party of the second part, witnesseth:

"That the said party of the first part has this day bargained and sold, and by these presents does hereby bargain, sell and obligate himself to convey or cause to be conveyed in manner as hereinafter stated unto the said party of the second part all and singular the following described property * * *."

Appellant's first proposition is: "The trial court erred in holding that the Martins (appellees) who had a contract for the purchase of land, owned the legal title thereto rather than the equitable title."

The controlling question in this case, as stated in appellees' brief, is "whether the claim of W. R. Martin and his wife to ownership to 1/2 interest in the land is an equitable interest as contended by appellant or whether the claim of Martin was a legal claim which could be enforced in a court of law without the aid of equity."

■ After giving a great deal of study to this case, we have reached the conclusion that on the date of the execution of the deed of trust to Reynolds Mortgage Company by Joyce, appellees were, under the contract of sale, the owners of the superior equitable title to the land in controversy, and F. J. Joyce was the holder of the naked legal title as represented by his deed thereto then of record. This conclusion, under the undisputed facts in this case, in our opinion, is inescapable and is sustained by our Supreme Court in Hennessy v. Blair, 107 Tex. 39, 173 S.W. 871, 873, Ann.Cas.1918C, 474, wherein it is said: "As used in respect to bona fide purchasers, the word 'title' has no reference to what may be the real beneficial interest of the vendor as disclosed by extrinsic proof. It has relation merely to what constitutes the evidence of his right. Patty v. Middleton, 82 Tex. 586, 17 S.W. 909. As is clearly explained in that case, if this were not so, there could be no instance of an innocent purchase unless the vendor were, in fact, invested with the beneficial interest.

As used in this sense, therefore, 'title' does not mean the beneficial interest in the property conveyed. It means such written evidence as under the laws of the state confers upon the vendor the legal estate in the land. Nothing else appearing, this constitutes a legal title in the vendor—the apparent title, upon which the good-faith purchaser may rely, though, *as between himself and others, the vendor may have no actual right to the land.* 'The question is not one of real beneficial ownership or of superior right, but of apparent ownership evidenced as the law requires ownership to be.'" (Italics ours.) Patty v. Middleton, supra; Rives v. James, Tex.Civ.App., 3 S.W.2d 932, writ dismissed; Pomeroy's Equity Jurisprudence 4th Ed., Vol. 1, p. 685, Sec. 368.

The contract of sale was not effective as a conveyance, but was an executory contract for the sale of land. Secrest v. Jones, 21 Tex. 121, 131, Secrest's Ex'rs v. Jones, 30 Tex. 596, 597; Wallace v. Wilcox, 27 Tex. 60; 43 T.J. p. 247, Sec. 148, and authorities cited in support thereof. See also Johnson et ux. v. Wood, 157 S.W.2d 146, recently decided by Commission of Appeals, but not yet reported [in State Reports].

■ It is true that appellees had paid all the purchase money at the time the Reynold's deed of trust was given, still they suffered the naked legal title to remain in Joyce and for this act of omission their rights in the land became inferior to those of an innocent purchaser or mortgagee for value without notice. This brings us to a discussion of the homestead rights of appellee Willie Lee Martin, wife of W. R. Martin. As stated above, it is undisputed that Mrs. Martin's homestead right had attached to her equitable title in said land at the time the Reynolds Mortgage Company's lien was created. She was living on said land then and has continued to live thereon with her family since. But the undisputed fact is that Reynolds Mortgage Company made inquiry of the husband, appellee W. R. Martin, as to the nature of his occupancy of said land and received the information from him in writing that he was holding as a tenant under a rental contract from Joyce. Appellees' holding under an equitable title to community property, this representation by appellee W. R. Martin, the husband and head of the family, not only estopped him, but the wife as well, from later asserting a homestead claim to said land so as to defeat the note and deed of trust lien securing

same held by appellant, assignee of Reynolds Mortgage Company. Ranney v. Miller, 51 Tex. 263; First State Bank of Carbon v. Thurman, Tex.Com.App., 12 S.W.2d 146; Home Owners' Loan Corp. v. Netterville, 134 Tex. 30, 132 S.W.2d 93, and authorities there cited. Appellant's proposition No. 1 is therefore sustained.

The judgment of the trial court is reversed in so far as it decrees title to a 1/2 undivided interest in the 240 acres of land to appellees, and is here rendered awarding to appellant said 1/2 undivided interest. Said judgment is also reversed in so far as it awards a personal judgment against appellees for certain moneys paid by appellant as taxes and is rendered in such respect for appellees. In all other respects the judgment is affirmed.

Affirmed in part and in part reversed and rendered.