## SHEATS v. KING.

No. 2343.

Court of Civil Appeals of Texas. Waco.
May 29, 1941.

Rehearing Denied June 19, 1941.

Ross Huffmaster, of Kaufman, for appellant.

Fred V. Meredith, of Terrell, for appellee.

RICE, Chief Justice.

This suit was brought in the district court of Kaufman county by George King, in his capacity as guardian of the estate of Guy Jacobs, non compos mentis, hereinafter referred to as plaintiff, against Sam Sheats, hereinafter referred to as defendant, seeking recovery on a vendor's lien and deed of trust note, together with foreclosure of said liens on a tract of land hereinafter referred to. Mary Ellen Sheats, a widow, hereinafter styled intervener, filed her plea of intervention, claiming the land in controversy as a homestead.

Trial was had to a jury, and at the conclusion of the evidence, and acting under instructions from the court, the jury returned a verdict in favor of plaintiff and against defendant for the amount sued for and for foreclosure; and in favor of plaintiff and against intervener to the effect that she was estopped to claim the land in controversy as her homestead, and foreclosing the above-mentioned liens as against her and removing the cloud cast on the title to said land by intervener's claims.

Judgment was rendered by the court on the instructed verdict returned by the jury as against both defendant and intervener, from which judgment intervener alone appeals.

Plaintiff pleaded that the note sued on was executed by the defendant and delivered to Robert C. Jacobs, guardian of the estate of Guy Jacobs, non compos mentis, in the sum of $750; and that of even date therewith, the defendant, for the purpose of better securing the payment of said note, executed and delivered to Tom Jacobs, as trustee, a deed of trust on and covering a tract of 112.76 acres of land situate in Kaufman county; that both said note and deed of trust recited that said guardian had advanced the sum of money represented by said note to the defendant's grantors as part of the purchase price of the real estate described in the deed of trust and conveyed to the defendant by deed of conveyance of even date therewith, executed by Georgia May Griffith and others; and that such guardian was subrogated to the rights and liens of the grantors in said deed; that on the resignation of Robert C. Jacobs as said guardian, the plaintiff George King was appointed guardian of the estate of said Guy Jacobs by proper orders of the probate court of Kaufman county, and duly qualified according to law; that default having been made in the payment of the interest due on said note, the same was declared due and payable.

The defendant Sam Sheats answered by general demurrer and general denial.

The intervener pleaded that she was the surviving widow of W. A. Sheats, who departed this life intestate in the year 1930 in Kaufman county, no administration having been had upon his estate, there being no necessity therefor; that about forty-five years prior to the institution of this suit, she and her said husband, during their coverture, acquired title to the tract of land in controversy, and lived on, used and claimed the same as their homestead until the death of her husband; and that after his death she had continued to reside on, use and claim said land as her homestead to the date of the trial of this case. Intervener further pleaded that on the 25th day of August, 1927, she and her husband, being desirous of borrowing some money, executed an instrument in form of a deed of conveyance, conveying to their son, Ben Sheats, the land in controversy; that on or about September 21, 1929, intervener and her said husband executed what purported to be a conveyance of the land in controversy to their said son, Ben Sheats, to correct an error in description in the deed above mentioned, and that the consideration of $100 recited in said conveyance was not in fact paid and that no consideration was paid by grantee therefor; that thereafter, on October 11, 1929, the said Ben Sheats executed a deed of conveyance to E. S. Parks, a son-in-law of intervener, conveying the land in controversy, and reciting as part of the consideration therefor the execution of four notes for $137.50 each, payable to Georgia May Griffith and others; that no consideration was in fact paid by Parks to Ben Sheats for said land, and that the sole purpose of said deed was to obtain a pretended loan of $550, which Ben Sheats claimed to have owed the payees mentioned in said notes; that on or about October 11, 1932, the said E. S. Parks delivered to F. M. Griffith, as trustee, a deed of trust covering the land in controversy, for the

**458**

purpose of better securing the payment of the above-described notes; that thereafter, on the 5th of May, 1936, the said F. M. Griffith, as trustee, pretended to sell said land and executed a pretended trustee's deed to the said Georgia May Griffith and others, conveying to them the tract of land in controversy; and that thereafter the said Georgia May Griffith and others executed a pretended deed conveying to defendant Sam Sheats the land in controversy, which conveyance recited a consideration of $750 paid and the execution by said defendant of a note for $750, being the note described in plaintiff's petition; and that of even date therewith defendant executed a deed of trust covering the land in controversy, to Tom Jacobs, trustee, for the purpose of securing the payment of said note.

Intervener alleged that each and all of the above-mentioned transactions were simulated and were subterfuges for the purpose of securing loans upon intervener's homestead, and were null and void; that each of the parties to each of the instruments above mentioned had actual notice and knowledge that the land in controversy was at all times occupied, used and claimed as a homestead by intervener and her husband until his death; and that since the latter's death intervener had continuously been in possession of said land, claiming it as her homestead. She prayed judgment that plaintiff take nothing, and that each and all the above-mentioned instruments be declared void.

Plaintiff answered by supplemental petition, alleging acts and conduct of W. A. Sheats and intervener by way of estoppel; and specially pleaded that intervener, although knowing that her son, Sam Sheats, was borrowing from plaintiff the sum of money evidenced by the note sued on and that he was giving as security therefor the deed of trust sought to be foreclosed in this suit, made no claim to such property as a homestead, and that plaintiff, relying upon the acts and conduct of intervener and the instruments executed by intervener and her husband, and without notice or knowledge of any claim on the part of intervener, advanced to Sam Sheats the sum of money herein sued for, and accepted his note and deed of trust as security therefor.

Appellant's sole assignment of error is that the court erred in giving a peremptory instruction to the jury to return a verdict in favor of plaintiff against the intervener, and in support thereof, urges that no title to the land in controversy was shown in Sam Sheats, hence no valid deed of trust could be given to him thereon; and that the evidence introduced on the trial raised issues of fact that should have been submitted to the jury for its determination.

We overrule this assignment. While the deed from Georgia May Griffith and others to Sam Sheats is not set forth in the statement of facts, we are of the opinion that the execution and delivery and recording of such deed is amply supported by the evidence. It is recited in the statement of facts that the vendor's lien note introduced in evidence is "the same vendor's lien note described in deed of said date from Georgia May Griffith et al to Sam Sheats, recorded in Vol. 246, page 571, Deed Records of Kaufman county, Texas." Both the note sued on and the deed of trust securing the same make reference to the execution of the above-mentioned deed. The defendant Sam Sheats, without objection, testified that he purchased the land in 1936 from W. Charlton Griffith and others. Intervener pleaded that Georgia May Griffith et al. "executed a pretended deed of conveyance to Sam Sheats", purporting to convey to him the land here involved.

It may be admittted, without so deciding, that the evidence introduced by intervener was sufficient to raise fact questions in reference to the validity of the deeds executed by intervener and her husband to her son, Ben Sheats; likewise as to the validity of the deed from Ben Sheats and wife to E. S. Parks, and as to the validity of the deed of trust executed by E. S. Parks to F. M. Griffith as trustee, and as to the trustee's deed from F. M. Griffith to Georgia May Griffith and others. However, these matters, in our opinion, become immaterial, because the record in this case reveals that intervener is estopped as a matter of law to claim the invalidity of the deed of trust executed by the defendant, her son, as security for the payment of the note sued on.

Judge Pat Coon testified, and his testimony was not contradicted, that he represented the guardian of the estate of Guy Jacobs, N. C. M., in making the loan of $750 to the defendant, evidenced by the note sued on; that defendant had come to his office requesting him to assist him in borrowing the sum of money evidenced by said note with which to purchase the land in controversy in this suit, and had said to him that he wanted to buy "the old place, so as to get it back in the family." The

record reveals that the title to the land at the time of these negotiations was in Georgia May Griffith and others by virtue of trustee's deed executed in pursuance of the power of sale contained in the deed of trust executed by E. S. Parks and wife in 1932 to secure Georgia May Griffith and others in the payment of four notes for the sum of $137.50 each, the deed of trust reciting that the sums of money evidenced by said notes were advanced by the payees therein as part of the purchase price for the land here involved and conveyed to E. S. Parks by Ben Sheats by deed of even date therewith. Judge Coon further testified without contradiction that Sam Sheats and Mrs. Sheats (intervener) both talked with him about taking up the note sued on in this case for the Jacobs estate; that he had an abstract of title to the land here involved, which he carefully examined, and that he gave the guardian of Guy Jacobs an opinion that the title was good; that he prepared the deed of trust here sought to be foreclosed and took the acknowledgment of Sam Sheats thereto.

Robert C. Jacobs, guardian, testified that Judge Pat Coon attended to all matters in connection with making the loan to Sam Sheats, and advised him it was a safe investment; that he, as guardian, signed the check, and that Judge Coon delivered it to W. C. Griffith and the note sued on was delivered to Judge Coon.

The defendant Sam Sheats testified that his father, mother (intervener) and Ben Sheats had all told him that Ben Sheats had owned the land since 1927, that his mother and father owned it until 1927, when they conveyed it to Ben Sheats by deed. He further testified that he purchased the land in controversy in 1936 from W. Charlton Griffith et al.; that Judge Coon had talked to him about it and told him that the Griffiths had foreclosed on it against E. S. Parks; that Judge Coon had come out to the house and told him and his mother (intervener) that he could get a loan through but he would have to put Sam in the lead; that he agreed to buy the place and that he signed the note and deed of trust sued on; that he had paid nothing on the note because the place did not make it; that he had tried to borrow the money to pay off the note sued on but had failed.

Intervener testified that she had tried to borrow some money to pay Mr. Griffith the money he had loaned; that the Federal Land Bank would not make her a loan and they kept worrying her about taking her home; that one day Judge Coon came out and said they would have to "put Sam Sheats in the lead" to get the money, and that she told Judge Coon just to go ahead with the loan; that this was all she knew about the Jacobs making the loan. She testified she had never talked to any of the Jacobs with reference to borrowing money from them; that Judge Coon said he was their attorney and would loan their money for them but he could not make the loan unless "we put Sam in the lead. Afterwards I went up to his office and talked to him and he said he and Mr. Charlton Griffith had fixed it all up." Intervener testified that she was present in Judge Pat Coon's office when Sam Sheats signed the note and deed of trust in question, and that she did not at that time tell Judge Coon that she claimed a homestead in the land in controversy. She further testified that when she and her husband conveyed the land to her son, Ben Sheats, she kept her intention to claim the land as a homestead a secret within her own breast, but that it was agreed that Ben should later re-convey the land to her, which he never did. She further testified that she told the Old Age Pension investigator that she did not have any title to the farm and owned no interest in it; that she never told anyone about claiming the land as her homestead since 1926 but that such a claim was just in her mind and a secret.

There is no contention on the part of intervener that Judge Coon, or anyone else, made any misrepresentations to her; or that she was defrauded in any way. Intervener admitted that she discussed the loan with Judge Coon, and that after the latter had told her they would have to put Sam in the lead, she told Judge Coon to go ahead with the loan. She makes no contention that Judge Coon put through a loan other than the one which she authorized him to make. She admitted she was present when Sam Sheats signed the deed of trust and note in controversy, and that she made no claim to anyone at that time that the land was her homestead. She did not testify that she did not understand and thoroughly appreciate the legal effect on her right and claim to this land of the note and deed of trust which she testified were signed in her presence in Judge Coon's office by her son. There is no contention that she was then laboring under any disability or duress. She was then a widow, with the legal capacity to, and we think the evidence conclusively shows

that she did, authorize Sam Sheats to execute and deliver and Judge Coon to accept the note and deed of trust securing the same. Having authorized the loan to be made, and having been admittedly present at the time the same was made, without making any claim of any rights in herself to the land, intervener is estopped as a matter of law to deny the validity and binding effect of the note and deed of trust involved in this litigation. Home Owners' Loan Corporation v. Netterville, 134 Tex. 30, 132 S. W.2d 93; Allen v. Exchange Nat. Bank, 21 Tex.Civ.App. 450, 52 S.W. 575; 1 Jones, Mortgages, Sec. 683; Pomeroy on Equity, Vol. 2, Sec. 810.

The judgment of the trial court is affirmed.