## J. R. PATTY V. W. D. MIDDLETON ET AL.

### No. 7902.

1. **Bona Fide Purchaser—Legal Title.**—If a vendor have such written evidence of his title to the land to be sold as under the laws of the State conferred on him an estate in fee, nothing further appearing, then it must be held in reference to the matter that he has not only *title*, but also *legal title*, notwithstanding he may have as between himself and others no beneficial interest.

2. **Same.**—Such a title is a legal title because it is such evidence of right as may be enforced in a court of law; and this is so because it is the evidence of ownership required by law and provided by the statute when lands are to be conveyed

3. **Bona Fide Purchaser.**—In determining whether one is a bona fide purchaser the inquiry is upon what evidence of title did the purchaser act; and if this proved ownership in the vendor, acquired in the mode prescribed by law, then in the absence of notice of some fact showing that the vendor had not such ownership or beneficial interest as the evidence showed to be in him, or of some fact sufficient to require inquiry as to this, the purchaser is authorized to believe and to act upon the belief that the vendor has the beneficial ownership or right shown by the evidence.

4. **Legal Title—Community—Wife's Estate.**—Where land is conveyed by deed to the husband, no beneficial interest of the wife appearing in the deed within the meaning of the law, the wife has no legal title, and upon her death the law does not confer upon her heirs any higher evidence of right or estate in character different from that held by her.

5. **Title Passed by Death of Wife to Her Children.**—The law does not cast upon the heirs of the wife at her death *the legal* title in lands of the community, title to which on the face of the deeds is vested in the husband, when the term *legal title* is used with reference to the rights of a bona fide purchaser from the survivor.

6.   **Cases Qualified.** — Yancy v. Batte, 48 Texas, 46; Johnson v. Harrison, Id., 257, discussed and limited.

7.   **Cases Adhered to.** — Edwards v. Brown, 68 Texas, 329; Hill v. Moore, 62 Texas, 610; Wren v. Peel, 64 Texas, 380; and Pouncey v. May, 76 Texas, 565, adhered to.

APPEAL from Hill.   Tried below before Hon. J. M. HALL.
The opinion states the case.

*Upshaw & Jordan* and *Smith & Wear*, for appellant.—If a party buys land and the records of deeds show the title to be in the party from whom he purchases, the purchaser is not required to hunt up the family for years back to see whether such property was community property or not; and if he has no notice, either constructive or actual, as to the claim of any one, save and except as is shown by the record, and there is no fact known to him which would put a prudent man upon inquiry, and he pays a full, fair, and valuable consideration for the same, then he comes within the rule of an innocent purchaser in good faith for a valuable consideration, and will be protected by law as such.   Hill v. Moore, 62 Texas, 611; Pouncey v. May, 76 Texas, 565; Edwards v. Brown, 68 Texas, 329.

*McKinnon & Carlton*, for appellees.—A deed to real estate taken in the name of either the husband or wife during coverture vests the legal title in the community, and upon the death of either, a legal title to one-half the land so acquired passes to the children, subject only to the payment of community debts.   Sayles' Civ. Stats., arts. 1053, 1654; Duncan v. Rawls, 16 Texas, 478; Thompson v. Cragg, 24 Texas, 582; Yancy v. Batte, 48 Texas, 46; Johnson v. Harrison, 48 Texas, 257; Dickerson v. Abernathy, Posey's U. C., p. 107; Mitchell v. Marr, 26 Texas, 329; Veramendi v. Hutchins, 48 Texas, 531.

STAYTON, CHIEF JUSTICE.—This action was brought by appellees to recover an undivided half of two lots in the town of Hillsboro, and it resulted in a judgment in their favor.   The parties have made an agreed case, which is as follows:

"It is hereby agreed between appellant and appellees, for the purpose of giving precedence to the above cause under the second clause of rule 59 of this court, that the conclusions of fact and law found by the trial court below, in connection with the appended statement, clearly present the issues of the law to be tried by this court, to-wit:

"1.   Whether or not, in view of said facts, appellant is an innocent purchaser of the property in controversy.

"2.   If an innocent purchaser of the property—that is, if bought without knowledge of the existence of appellees and their right to the

property, either actual or constructive—then can the defense of innocent purchase be maintained in this suit against the rights of appellees?"

The conclusions of fact found by the court are as follows:

"1. That plaintiff and defendant admit R. D. Jones to be the common source through whom they deraign title.

"2. That N. S. Middleton acquired the property described in the petition from R. D. Jones, as shown by his deed read in evidence, in 1867, during the existence of the marital relations between himself and his wife, who was the mother of the plaintiffs, and therefore said property was the community property of said N. S. Middleton and his said wife.

"3. That N. S. Middleton's said wife died in 1867, leaving the plaintiffs herein as her only children surviving her, and the property sued for and some personal property as the community estate of herself and N. S. Middleton, and leaving no community debt against said estate.

"4. That N. S. Middleton, after the death of his said wife, sold the lots sued for to R. D. Jones, and the defendant holds through deeds from all the heirs of R. D. Jones and the interest of his former partner B. K. Brockinton, which deeds are sufficient to vest title in defendant if not defeated by the claim of plaintiffs.

"5. That John W. Middleton and R. D. Jones had notice of the fact that N. S. Middleton acquired this property during the lifetime of his wife, and notice of her death, and that plaintiffs were her children and survived her.

"6. That neither J. R. Patty nor B. K. Brockinton had any actual notice that the said lots in question were bought by N. S. Middleton during his marriage with his said wife, or that the same were sold after the death of his said wife, or that plaintiffs were the children of said N. S. Middleton and his said wife."

The conclusions of law are as follows:

"1. The court under the facts concludes that the plaintiffs are entitled to recover a one-half interest in said lots as their community interest in same, inherited from their mother.

"2. That the deed from N. S. Middleton to John W. Middleton only passed the interest of N. S. Middleton, which was one-half, and was not sufficient to pass the interest of plaintiffs to the other half of said lots.

"3. The doctrine of innocent purchaser does not apply in this case, because the plaintiffs claim title by inheritance, and the same is not governed by the laws of registration.

"4. It is believed that the doctrine laid down in Edwards v. Brown and Hill v. Moore, and other cases holding similar views as therein expressed, are not applicable or authority in this case, for the reason that the facts in each of said cases showed that there was no legal title vested in the community estate at the time of the death of the wife.

"5. That the statute fixes the community estate and vests absolutely one-half interest in the survivor and the other half in the children of the decedent, subject only to the payment of community debts; and if there are no such debts, then the one-half interest passes to the children by virtue of the statute, and the survivor has no legal right to dispose of the same; and the law vesting said interest in the children is notice to all purchasers; and they are held in law to take notice of the death of the wife and the rights of the children, and no purchaser will be heard to say that he had no notice of the legal title of the children."

And in further elucidation of the finding of facts by the court, the record shows the following:

"That N. S. Middleton bought said lots, and they were conveyed to him in person during the life of his wife, in 1867, by deed in the usual form, which deed was recorded in record of deeds in Hill County, and in the same year she died, leaving surviving as her children the appellees; and during that year, after her death, he sold said lots and removed to Anderson County, Texas, a distance of over one hundred miles from the city of Hillsboro, Hill County, where said lots are situated. That nothing else is of record showing that appellees had any interest in the same. Appellant bought said lots in 1887, and at the time of the purchase by him he knew nothing of N. S. Middleton, or that said Middleton had ever been married or ever had any children. It was also proved that appellant paid a full, fair, and valuable consideration for said lots, without knowledge of any other claimant to the same, and did not know of such claim as appellees' till the institution of this suit in the year 1890."

John W. Middleton was the person to whom N. S. Middleton conveyed, and the former conveyed to Ratcliff, who conveyed to R. D. Jones.

The statement of facts shows that when appellant purchased he was not in possession of any fact that would put him upon inquiry as to any right appellees might have; and the question arises in this case, whether a person deraigning title through a father after the death of the mother can be protected as an innocent purchaser of community property.

The court below held not, on the theory that the law affects every such purchaser with notice that the property was purchased during the lifetime of the wife, and with the further fact that the wife was dead at the time the conveyance through which he claims was made, and that children survived her. The court below held, that on the death of a wife a legal title vested in her children to one-half of the community property, notwithstanding the deed by which it was acquired in terms conveyed the property to the husband.

We do not understand it to be contended, if the legal title to property, conveyed either to the husband or wife during marriage under

such circumstances as to make it community property, vests in the person to whom it is in terms conveyed, that a conveyance by this parent made after the death of the other will not furnish the basis for a purchaser in good faith entitled to protection against the heirs of the deceased parent; but do understand it to be contended that the legal title to all community property vests in husband and wife alike, without reference to the fact that the deed through which the property is acquired on its face purports to convey only to one parent, and that on the death of the other a like title will vest in the children or other descendants of such deceased parent.

If it be conceded that such title vests in each parent when the conveyance is to one, it must be conceded that it vests in the children or other descendants on the death of either parent to the extent of the interest of such deceased parent; but if the title which vests in one of the parents to community property, conveyed in terms to the other, be only an equitable title or interest in the one to whom the conveyance is not in terms made, then it must follow that such will be the title or interest inherited by the children of such parent; for, taking by inheritance from another holding only an equitable title or interest, the heir can not acquire a title other than such as the ancestor had.

In view of the rules which give protection to one who sustains to property the relation of bona fide purchaser, when he has acquired the legal title to property, it becomes necessary to consider the reasons on which these rules are based, and to inquire what is meant with reference to them by the words "legal title," or equivalent words.

It can not be denied that the beneficial interest of husband and wife in their community property is equal, and so without regard to the fact that it may have been conveyed in terms to one only; but does it follow from this that both take a legal title as these words are used with reference to the rules giving protection to bona fide purchasers? Protection is given to a bona fide purchaser on the ground that it would be unjust to deprive him of property which he has purchased from another holding all the evidences of right necessary under the law to show that he is the true owner of the thing purchased; and when a person not having the entire beneficial interest is permitted by those having adverse interests to hold the evidences of perfect right in himself prescribed by law for the purpose, among others, of showing who the true owner is, then the law imputes to those having such adverse interests some degree of negligence, for which they ought to suffer rather than that loss should be imposed on a bona fide purchaser from one holding the evidences of complete ownership.

The word "title," as used in reference to bona fide purchasers, has reference to the evidence of rights held by the vendor, which by a conveyance becomes the purchaser's evidence of right, and not to what may be the real beneficial interest of that person as may be shown out-

side of such evidence by extrinsic proof. If this were not so, no case could arise in which one purchasing from another would be a bona fide purchaser unless his vendor had the beneficial interest he undertook to convey; for if by "title" is meant right or beneficial interest in the thing sold to the extent purporting to be conveyed, this could never be conferred by the conveyance of a person who did not have it; and if he had it his conveyance would pass it, and there would be no necessity for his vendee to rely upon the defense of bona fide purchaser.

If a vendor have such written evidence of his title to the land to be sold as under the laws of this State confer on him an estate in fee, nothing further appearing, then it must be held in reference to the matter under consideration that he has not only title but also legal title, notwithstanding he may have as between himself and others no beneficial interest whatever. Such a title is a legal title because it is such evidence of right as may be enforced in a court of law, and this is so because it is the evidence of ownership required by law and provided for by statute where lands are to be conveyed.

There is no doubt that the word "title" is often used to signify the right or interest a person has in or to the thing referred to, and when thus used is the equivalent of the word "estate;" but this is not the sense in which it is used when it has reference to a purchase of real or personal property by a bona fide purchaser, for the inquiry in such cases is, upon what evidence did the purchaser act; and if this proved ownership in the vendor, acquired in the mode prescribed by law, then, in the absence of notice of some fact showing that the vendor had not such ownership or beneficial interest as the evidence showed to be in him, or of some fact sufficient to require inquiry as to this, the purchaser is authorized to believe and to act upon the belief that the vendor has the beneficial ownership or right shown by the evidence.

The question is not one of real beneficial ownership or of superior right, but of apparent ownership evidenced as the law requires ownership to be.

If the deeds through which the lots in controversy were acquired had shown right in the mother of appellees, no person could have become an innocent purchaser of her interest through a purchase from the father, acting in his own right and not in a representative capacity, after her death; for purchasers from him would be required at their peril to ascertain who were her heirs.

While the evidences of right on which appellant relied when he purchased showed that his vendor was the owner of the lots, it did not evidence the fact that they were purchased by the father of appellees during his marriage with their mother, nor any other fact that would put him upon inquiry as to any fact affecting the right of the father or his power to convey the estate his deed purported to pass. Appellees took, by operation of the law, right to one-half of the lots, subject to

payment of community debts, on the death of their mother; but there was no evidence of the mother's beneficial interest contained in the deed to the father, and for this reason she had, within the meaning of the law, no legal title, and the law did not confer on her heirs higher evidence of right or estate in character different to that held by her. The legal title was in the father by the terms of the deed under which he held, whether we use the term in either of the senses before referred to, from which it necessarily follows that the estate held by the mother and transmitted to her children was equitable, as was her title; for, as said by a distinguished elementary writer, "An equitable *estate*, in its very conception, and as a fact, requires the simultaneous existence of two estates or ownerships in the same subject matter, whether that be real or personal; the one legal, vested in one person and recognized only by courts of law; the second equitable, vested in another person, and recognized only by courts of equity. These two interests must be separate, and, as a rule, must be held by different persons.  *  *  * In all cases of equitable *estates*, as distinguished from lesser interests, whether in force for life or for years, they are in equity what legal estates are in law; the ownership of the equitable estate is regarded by equity as the real ownership, and the legal estate is, as has been said, no more than the shadow always following the equitable estate, which is the substance, except where there is a purchaser for value and without notice who has acquired the legal estate." 1 Pome. Eq. Jur., sec. 147.

There is no doubt that in many opinions this court has used expressions to the effect that the right of heirs of a deceased member of the matrimonial union, even where land was conveyed during the marriage to the survivor, was a legal estate and the title transmitted by descent a legal title; but this is not true as matter of law, and to so hold when these words or terms are used with reference to the right of a bona fide purchaser from the survivor to whom the lands were directly conveyed, would overturn all the long recognized rules applicable to the question; for the question then is not as to the real interest which the wife or her heirs had, but as to the apparent right in the survivor as evidenced by the deeds through which the property was acquired.

It is contended, however, that this court has heretofore established a different rule in the cases of Yancy v. Batte and Johnson v. Harrison, and that this ought to be adhered to, notwithstanding later decisions which counsel seek to show are not applicable to the case before us.

In the case of Yancy v. Batte, 48 Texas, 46, it must be conceded that the pleadings raised the question involved in this case; but it does not appear from the statement of the case as reported, nor from the opinion of the court, that the facts raised such a question, for it is left uncertain whether Yancy was put upon inquiry as to the rights of the children of Mrs. Grigg before he paid for the land, and counsel for appel-

lee, in his brief, claimed that he was advised of their rights before he made payment. The brief of neither counsel raised the question involved in this case, and the opinion of the court does not allude to it. The court held that the heirs were entitled to recover unless equitable defenses were made out, and the only equitable defense to the action considered was, whether the children of Mrs. Grigg had taken by inheritance from their father property in value equal to their interest in the land in controversy.

The only other question decided or discussed in the opinion arose as to the right to partition without first making compensation for improvements made by Yancy, when in partition his improvements might be allotted to him. There was a finding by the jury that defendants had made improvements in good faith, but it is not shown that there was a finding that the purchase money was paid before Yancy was put on inquiry as to the rights of the children of Mrs. Grigg, and the opinion states that "the issues submitted were not exhaustive of the case."

The case of Johnson v. Harrison, 48 Texas, 257, was decided at the same term as the case above referred to, and as the case was disposed of in the District Court on demurrer, no question was raised other than the sufficiency of the petition to entitle the children of the mother to recover her community interest in land sold by their father after the mother's death. The petition did not allege that the conveyance was not made by the father to satisfy community debts, nor did it deny the existence of equities against the claims of the children. The District Court held that such averments were necessary, and this court held that the averments that the land in controversy was community property belonging to the mother and father, that she was dead, and that plaintiffs were her children, coupled with the further averment that the property was sold after the death of the mother, entitled her children to recover unless equitable defenses were shown by the defendant, and that it was not necessary for the plaintiff to negative the existence of these.

That was all that was decided in the case, but in the opinion cases were reviewed bearing or supposed to bear on the question then under consideration; but in the course of the opinion it was said, that "The interest of the survivor and that of the children is the same—each one-half of the remainder. The legal title is in the survivor and the children. The child who sues for his share is not asserting an equity, but a legal right under the statute. * * * The children of the deceased member of the community who sues the vendee of the survivor occupy just the same position as in other cases of heirship; they show a legal title, and are therefore entitled to recover, unless a valid sale is shown." It is thus seen that no such question as is involved in this case was before the court in that.

After the opinion in the case last referred to was delivered, Justice Moore filed a dissenting opinion in the case of Yancy v. Batte, in which he did discuss the question involved in this case, and also the questions which were made, or possibly might have been made, in the two cases, and it is probably more from this discussion than from what was decided in either case that counsel rely on them as authority in this.

In view of the high respect which the members of this court, in common with the bar of the State, entertain for the opinions of all the judges who were members of this court at the time the cases referred to were decided, had they had cases before them rendering it necessary to decide the question now before us and thereon decided adversely to the views we entertain, we would hesitate to overrule their decisions, even in cases in which they did not become rules under which property would be supposed to have been acquired, and nothing short of an absolute conviction that they were erroneous would induce us to do so. As the questions involved in this case, however, were not involved in the cases referred to, and were neither discussed nor decided by the majority of the court concurring in the disposition made by them, we can not hold that they established a rule of property, nor that it was intended to decide the question now before us, and we therefore hold such expressions as are found in the opinions having bearing on the question as obiter, and of importance only in view of the recognized learning and ability of the judges from whom they came.

The questions involved in this case were raised and decided in accordance with views herein expressed, in the following cases: Edwards v. Brown, 68 Texas, 329; Hill v. Moore, 62 Texas, 610; Pouncey v. May, 76 Texas, 565; Wren v. Peel, 64 Texas, 380. Counsel, however, seeks to distinguish them, but this can not be successfully done, for each involved the very questions presented in this case, and we regard them as decisive.

The opinions in the cases referred to, as well as the dissenting opinion of Justice Moore in the case of Yancy v. Batte, wherein it discusses the question involved in this case, present many views and reasons in favor of the rule we hold correct, which we do not deem it necessary to present, and did not the near closing of this term forbid it, a consideration of the statutory provisions bearing on community ownership and the powers and rights that grew out of it would be discussed.

The finding and evidence show that appellant was entitled to protection as a bona fide purchaser, and the judgment of the court below will be reversed and a judgment here rendered in his favor. It is so ordered.

*Reversed and rendered.*

Delivered December 18, 1891.