## ALLDREDGE et al. v. WILSON. (No. 1140.)

(Court of Civil Appeals of Texas. Beaumont. Jan. 17, 1925.)

1. **Husband and wife** &#9902;273(9)—**Survivor of community may sell homestead to pay community debts.**

Survivor of community may sell community homestead of himself and deceased wife to pay community debts.

2. **Vendor and purchaser** &#9902;244—**Notice to grantee that deed of community homestead to grantor was intended as mortgage to secure community debts held not shown.**

Evidence *held* not to show that grantee had notice that deed of community homestead to grantor was intended as mortgage to secure community debts.

3. **Vendor and purchaser** &#9902;242—**Burden on plaintiffs in trespass to try title to show notice to defendant that deed intended as mortgage.**

In trespass to try title, burden was on plaintiffs to show that defendant had notice that deed of community homestead to his grantor was intended as mortgage to secure community debts.

4. **Husband and wife** &#9902;273(9)—**Deed of community homestead to pay community debts barred by limitations not defeated.**

·That community debts were barred by limitations, when survivor of community conveyed community homestead to pay them, would not defeat deed.

Appeal from District Court, Angelina County; L. D. Guinn, Judge.

Suit by Griftha Alldredge and others against J. E. Wilson. Judgment for defendant, and plaintiffs appeal. Affirmed.

V. E. Middlebrook, of Nocogdoches, and Fairchild & Redditt, of Lufkin, for appellants.

Collins & Denman, of Lufkin, for appellee.

WALKER, J. This suit in the ordinary form of trespass title was instituted by appellants against appellees to recover the title and possession of a certain lot in the town of Lufkin, Angelina county, Tex. On a trial to the court with a jury, at the conclusion of the evidence a verdict was instructed in favor of appellee on his motion, to which appellants duly excepted and in due form have prosecuted this appeal.

Appellants were the children and heirs at law of William Alldredge and his wife, Celia Alldredge, both of whom died in 1908, and they claim the land in controversy under this heirship.

[1, 2] On the 27th day of·August, 1904, Houston Bradford and wife conveyed the lot in controversy to William Alldredge for a consideration of $50, one-half of which was paid in cash and the balance in· a note, though the·deed showed that all the consideration was paid in cash. On July 7, 1908, William Alldredge conveyed the lot by an·absolute conveyance to J. H. Henderson on a recited consideration of $155, which on the face of the deed was paid at the time of its execution and delivery. On the 25th day of February, 1919, Henderson, by an absolute deed, conveyed the land to appellee on a consideration of $100, which was, in fact, paid. Celia Alldredge was dead when William Alldredge executed the deed to Henderson. Though in the form of a deed, the conveyance from Alldredge to Henderson was understood by and between the parties thereto as a mortgage to secure Henderson in the sum of $155 due him by William Alldredge; that is, this indebtedness was a community debt from William and Celia Alldredge to Henderson. Henderson was to hold the property on condition that he would collect the rent until his debt was paid, and then reconvey it to William Alldredge. The issue was raised that Henderson collected more than enough rent to pay his debt. It also appears, as a matter of law, that at the time appellee bought the property from Henderson the consideration paid by him was its reasonable market value. Of course, as the survivor of the community, William Alldredge had the power to sell the community homestead of himself and his deceased wife to pay the community debts. As the evidence in this case. showed the existence of community debts from Alldredge and wife to Henderson, the execution of the deed from William Alldredge to Henderson, as an adjustment of these debts, and that appellee paid Henderson the reasonable market value of the property, the only issue we see in this case against the court's instructed verdict is, Did appellee have notice of the character of the instrument held by Henderson at the time he purchased the property from Henderson and paid value therefor? One J. D. Watts, appellants' witness, and son-in-law of Henderson, represented Henderson in the sale of the property, and as he was the only person that talked with appellee about the title, and as the evidence fails to show that any infor-

---

mation of any other kind or character or from any other source was visited on appellee, the question of notice must be determined by the effect of Watts' evidence. Appellant quotes as follows from Watts' evidence:

"Mr. Henderson gave instructions as to what to tell Mr. Wilson about this place, and I carried out those instructions. I sold him the place and with the deed from William Alldredge and the receipts for one vendor's lien note, and the burial expense paid to W. M. Glenn, and turned over to him, and told him about, the Lufkin Land & Lumber Company bill, which had been misplaced, and sold him the place with the understanding they were the bills which Mr. Henderson had paid out on the property, and that the deed was made by the man after his wife's death. * * * I told him so far as I knew about the Alldredge family, and about Alldredge's wife not having signed the deed. I delivered Mr. Wilson the receipts and papers and the deed, and he was to take it as it was. I told Mr. Wilson that the deed showed for itself who signed and who did not sign it, and the receipt showed that the expenses had been paid, and therefore that was the way it stood. I told Mr. Wilson that when he bought the place, and any one could see that the deed from Alldredge was signed only by one party, I did not know that there were any Alldredge children at that time. It was right then, or right after then, that something was mentioned about him having a son, but I don't remember whether it was Mr. Henderson or Mr. Wilson who mentioned that, or whether it was right at the time of the sale or right after it that the statement about the son was made, but it was either before the negotiations were closed, or right afterwards, that some one said there was a son in it somewhere. * * * After I told Mr. Wilson about the man's wife being dead, and not signing the deed, I told him if he wanted to pay $100 for it, as it was, I would make him a deed to it, with the explanation that the receipts ought to cover her part in it; that was my opinion about it. I told him that, and then told him about the receipts. I told him in that connection if he wanted to buy the place at $100 and take it as it was I would sell it to him. I told Mr. Wilson it was only signed by William. I believe I told Mr. Wilson Mr. Henderson told me to tell him he had no deed from Alldredge's wife."

Appellee gives the following additional quotations from Watts:

"I negotiated the deal between Mr. Henderson and Mr. Wilson for the land in this case. I sold him the place and with the deed from Wm. Alldredge and the receipts for one vendor's lien note, and the burial expenses paid to W. M. Glenn & Co., and turned over to him, and told him about, the Lufkin Land & Lumber Company bill, which had been misplaced, and sold him the place with the understanding that they were the bills which Mr. Henderson had paid out on the property. I told Mr. Wilson that the deed showed for itself who signed and who did not sign it, and the receipts showed that the expenses had been paid, and therefore that was the way it stood."

"I do not know the amount of the lumber bill Mr. Henderson paid for Alldredge. I couldn't even approximate it. All I remember is something about a bill for the lumber. I have not been able to find that bill. Mr. Henderson mailed the bill to me along with another deed and the receipts from Glenn & Co., and the vendor's lien note from Houston Bradford. This paper is the note he sent me. It is what I would call a vendor's lien note. It is signed by W. M. Alldredge, and is payable to Houston Bradford. This is the note Mr. Henderson turned over to me. This bill from W. M. Glenn & Co. is the one he gave me, and these are the two deeds I turned over to Mr. Wilson. I did tell Mr. Wilson that Mr. Henderson had paid this vendor's lien note and the debts and funeral expenses for Alldredge's wife, and the bill for the lumber for his house."

"I sold him the place and with the deed from Wm. Alldredge and the receipts for one vendor's lien note, and the burial expenses paid to W. M. Glenn & Co., and turned over to him, and told him about, the Lufkin Land & Lumber Company bill, which has been misplaced, and sold him the place with the understanding that they were the bills which Mr. Henderson had paid out on the property. I delivered to Mr. Wilson the receipts and papers and the deed, and he was to take it as it was. I told Mr. Wilson that the deed showed for itself who signed and who did not sign, and the receipts showed that the expenses had been paid."

"I told Mr. Wilson that Mr. Henderson told me that it was a deed and it ought to be good as he had kept these people up. That is about what Mr. Henderson told me. He said: 'Here is the papers and the deed, and it ought to be good.'

"I testified a while ago in answer to Judge Middlebrook's question that in my dealings with Mr. Wilson I followed the instructions of Mr. Henderson with reference to the sale. Mr. Henderson did not tell me to tell Mr. Wilson that this deed was nothing but a mortgage, and I never told Mr. Wilson that at any time. I did tell Mr. Wilson that Mr. Henderson had paid this vendor's lien note and the debts and funeral expenses of Alldredge's wife and the bill for the lumber for his house. I never told Mr. Wilson that Mr. Henderson told me that deed was a mortgage. I told Mr. Wilson that Mr. Henderson told me it was a deed and it ought to be good as he had kept those people up."

[3, 4] As we construe the evidence of the witness Watts, there is not a suggestion of notice to appellee of any defect in Henderson's title. Watts says very clearly that he told appellee that Henderson's conveyance was a deed, and that the consideration for the deed was the community debts due by William Alldredge and his deceased wife to Henderson. Watts exhibited to appellee the evidence of these debts. As the burden rested on appellants to visit appellee with notice of the character of the instrument executed by their father to Henderson (Patty v. Middleton, 82 Tex. 586, 17 S. W. 909), it clearly appears that they have failed to discharge this burden. As appellee had no notice of the character of the deed under which

Henderson held, the only facts necessary for him to show to recover here were that there were community debts; that the property conveyed was community property; and that the seller was the survivor of the community. Norwood v. King (Tex. Civ. App.) 155 S. W. 366. All these facts appeared from the record without dispute. The facts that the community debts may have been barred by limitation at the time Alldredge made the conveyance to Henderson would not defeat his deed. Stone v. Jackson, 210 S. W. 953, 109 Tex. 385.

The judgment of the trial court is affirmed.