

## NUMBER 13-09-00159-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **CITY OF EDINBURG AND THE TEXAS DEPARTMENT OF TRANSPORTATION,** | **Appellants,** |
| **v.** | |
| **A.P.I. PIPE & SUPPLY, LLC AND PAISANO SERVICE COMPANY, INC.,** | **Appellees.** |

### On appeal from the County Court at Law No. 2 of Hidalgo County, Texas.

## O P I N I O N

### Before Justices Rodriguez, Benavides, and Vela
### Opinion by Justice Benavides

Appellants, the City of Edinburg (the "City") and the Texas Department of Transportation ("TxDot"), appeal the trial court's denial of their plea to the jurisdiction in favor of appellees, API Pipe and Supply, LLC and Paisano Service Co., Inc. (collectively "API/Paisano"). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (Vernon 2008). By one issue, the City and TxDot argue that they have sovereign immunity from API/Paisano's

claims. We affirm.

## I. BACKGROUND[1]

### A. Original Suit for Condemnation

On February 24, 2003, the City filed a petition for condemnation in County Court at Law No. 4, Hidalgo County, Texas. The petition sought to acquire fee title to 9.869 acres of land out of Blocks 37, 38, and 39 of the Santa Cruz Ranch Subdivision for the public purpose of laying out, opening, constructing, reconstructing, maintaining, and operating a certain right-of-way for U.S. Highway 281 drainage outfall ditches. In its petition, the City set out the following:

> That the Plaintiff [the City] and the Defendant [H.B. White a/k/a Herschell B. White][2] have been unable to agree on the value of said real estate and interest therein to be condemned or the damages occasioned by the acquisition of such land and ask that Special Commissioners be appointed as provided by law to assess the damages of the Defendant. WHEREFORE, PREMISES CONSIDERED, Plaintiff respectively prays that three disinterested freeholders be appointed as Special Commissioners to assess the damages, [sic] of Defendant; that the said Special Commissioners filed [sic] their decision as required by law; that Plaintiff have a final judgment of condemnation vesting in the fee title to said land and the rights therein, all as more particularly set out above. . . .

On April 25, 2003, a special commissioners hearing was held. White, the landowner at that time, and the City presented evidence of the value of the property based on appraisals prepared for each party by different appraisers. The appraiser hired by the City valued compensation due White at $165,196, and White's appraiser valued the

---

[1] This is the second time this Court has addressed this case, and the facts relevant to the first appeal are again relevant to the instant appeal. *See generally Tex. Dept. of Transp. v. A.P.I. Pipe & Supply, LLC*, No. 13-07-221-CV, 2008 WL 99629 (Tex. App.–Corpus Christi Jan. 10, 2008, no pet.) (mem. op., not designated for publication).

[2] At the time the City filed its petition, the property was owned by H. B. White a/k/a Herschell B. White. API/Paisano purchased the property from White at a later date and, thus, were not parties to the City's condemnation proceeding.

2

compensation due at $326,721. Each appraiser valued the compensation based on a fee simple acquisition. The special commissioners awarded $224,249 to White as adequate compensation for the property being condemned. They also awarded the City "all rights described and prayed for in Plaintiff's Original Statement and Petition for Condemnation."

On May 1, 2003, the City deposited $224,249 into the court's registry, and on May 7, 2003, White withdrew the money. Neither party objected to the special commissioners' award. On June 3, 2003, Hidalgo County Court at Law Number 4 entered its "Judgment of Court in Absence of Objection" (the "2003 Judgment") adopting the special commissioners' award that vested fee title in the City.

On May 19, 2004, however, the county court entered a "Judgment Nunc Pro Tunc" (the "2004 Judgment") regarding the same 9.869 acres of property. This order stated the following:

> [The City] is entitled to condemn, and [does] hereby have judgment against the above named Defendant and any other interested parties for *a right of way easement* over that real property described in Exhibit "A" and "B" for the purpose of opening, constructing and maintaining a permanent channel or drainage easement in, along, upon and across said property together with the right and privilege at all times of the [City], its agents, employees and representatives of ingress and egress to and from said property for the purpose of making any improvements, modifications or repairs which [City] deems necessary.

(Emphasis added). The 2004 Judgment also provided that it "supercedes and makes [the] 'Judgment of Court in Absence of Objection' signed on June 3, 2003[,] null and void, without effect and vacated by this Court. This Court hereby enters the Judgment Nunc Pro Tunc as the sole and final judgment of the case." The 2004 Judgment was filed in the real property records on May 19, 2004.

In September 2004, through a general warranty deed with a vendor's lien attached, API/Paisano purchased approximately thirty-four acres from White. This purchase

3

included the 9.869 acres of land at issue in this case, subject to an easement granted to the City as set forth in the 2004 Judgment. On June 22, 2005, the City granted an easement over the property in question to the State of Texas, by and through TxDOT, "for the purpose of opening, constructing and maintaining a permanent channel or drainage easement."

On May 16, 2006, API/Paisano filed their original petition against the City and TxDot, claiming inverse condemnation for the taking of soil located within the drainage channel.[3] TxDOT and the City filed pleas to the jurisdiction, which the trial court denied.

## B. The First Appeal

TxDot and the City appealed the trial court's ruling on their plea to the jurisdiction. *See generally Tex. Dept. of Transp. v. A.P.I. Pipe & Supply, LLC*, No. 13-07-221-CV, 2008 WL 99629 (Tex. App.–Corpus Christi Jan. 10, 2008, no pet.) (mem. op., not designated for publication). TxDot and the City argued that they were immune from a suit for inverse condemnation because API/Paisano did not have an interest in the property. TxDot and the City reasoned that the 2004 Judgment was void because it was issued after the trial court's plenary power expired and because it purported to substantively change the judgment. *Id.* at *4. Thus, the City and TxDot argued that the 2003 Judgment was the effective judgment and granted the City title to the property in fee simple. *Id.*

We agreed that the 2004 Judgment was void and that the 2003 Judgment granted the City title to the property in fee simple. *Id.* We held, however, that fact issues precluded a decision on whether API/Paisano had an interest in the property as good faith purchasers for value:

---

[3] API also asserted a claim for conversion.

4

Although we have concluded that the City acquired the property at issue in fee simple pursuant to the 2003 Judgment, an unrecorded conveyance of any interest in real property is void as to a creditor or subsequent purchaser who gives valuable consideration and is without actual notice of the transaction. There is evidence in the record that only the void 2004 Judgment was recorded and that API purchased the property from White subject to an easement owned by the City. There is no support in the record to establish that the conveyance to the City in fee simple, awarded pursuant to the 2003 Judgment, was recorded. Furthermore, API asserts it did not have actual knowledge of the 2003 Judgment. Thus, fact questions remain which affect the jurisdictional issue of appellant's immunity claim. Because a trial court cannot grant the plea to the jurisdiction if the evidence creates a fact question regarding the jurisdictional issue, the trial court correctly denied appellants' pleas to the jurisdiction.

*Id.* at *5 (citations omitted). Therefore, we affirmed the trial court's denial of the City and TxDot's plea to the jurisdiction, and the case proceeded in the trial court.

## C.    Subsequent Proceedings

After the appeal, TxDot and the City filed a second plea to the jurisdiction. In the second plea, TxDot and the City argued that the 2003 Judgment was recorded in the official records of Hidalgo County, Texas on April 28, 2004. TxDot and the City attached a certified copy of the 2003 Judgment, which shows it was recorded as document number 1328354 in the property records on April 28, 2004, at 2:57 p.m.—before API/Paisano's purchase of the property on August 30, 2004. TxDot and the City claimed that API/Paisano were not good faith purchasers for value without notice because the 2003 Judgment was recorded in the official property records prior to API/Paisano's purchase of the property and because the 2004 Judgment references the 2003 Judgment, providing them with actual notice of the City's interest in the property.

The City and TxDot further claimed that API/Paisano's suit was not just for inverse condemnation but for trespass to try title, and they are immune from such a suit. The City and TxDot contended that they were immune from suit for any negligence claim and that

5

a party cannot acquire a property interest adverse to a governmental entity by the application of an equitable doctrine such as estoppel, laches, adverse possession, dereliction, or the acts or conduct of their officers or agents. Alternatively, the City and TxDot argued that any interest API/Paisano had in the property would be subject to the easement granted in the 2004 Judgment, which allowed the City and TxDot, as its assignee, the right to use all materials in the easement for the purpose of constructing, repairing, or improving the highway.

API/Paisano filed a response to the plea and incorporated evidence attached to an earlier-filed motion for partial summary judgment. API/Paisano argued that the 2004 Judgment was an agreed judgment that was approved by (1) counsel for the Whites; (2) counsel for the City of Edinburg; and (3) TxDot representatives.[4] API/Paisano submitted a facsimile from Mary M. Kelly of the City of Edinburg's Public Works Department to the City's attorney instructing him to execute the 2004 Judgment and to forward it to the City after recording it "for TxDot submission, as they require original documents with field notes & parcel plats as attached exhibits." API/Paisano also submitted an e-mail from Pedro Segundo with TxDot to Kelly, stating that he "spoke to Randy Ward, ROW[5] Attorney regarding the proposed Judgment Nunc Pro Tunc for the above subject parcel. Mr. Ward has no problem with the Draft as presented by" the City's attorney.

API/Paisano argued that by executing the 2004 Judgment, the City and TxDot permitted the Whites to hold evidence of complete ownership of the property in fee simple, and the 2004 Judgment was intended to be relied upon and was, in fact, relied upon by

[4] API/Paisano also amended its petition to drop its claim for conversion, leaving only the claim for inverse condemnation.

[5] Although not explained in the briefs or in the record, based on the context, we believe that "ROW" stands for "Right of Way."

6

third parties. Thus, API/Paisano purchased the property in good faith, and the law imputes onto TxDot and the City "some degree of negligence, for which they ought to suffer." API/Paisano argued that at most, they were only subject to the easement granted in the 2004 Judgment, which did not permit TxDot to remove soil from the property without compensation.

On September 2, 2008, the trial court held a hearing on the plea to the jurisdiction. On December 18, 2009, the trial court denied the plea, and this interlocutory appeal ensued.

## II. STANDARD OF REVIEW

"A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit." *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). A plea to the jurisdiction tests the trial court's subject-matter jurisdiction. *Tex. Dept. of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999).

When a plea to the jurisdiction challenges the plaintiff's pleadings, "[w]hether a pleader has alleged facts that affirmatively demonstrate a trial court's subject[-]matter jurisdiction is a question of law reviewed de novo." *Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). The trial court must construe the pleadings liberally in favor of the pleader. *Id.* If the pleadings do not allege facts sufficient to affirmatively demonstrate jurisdiction, but the pleading defects are curable by amendment, the issue is one of pleading sufficiency, and the pleader should be offered an opportunity to amend. *Id.* at 226-27.

If the plea to the jurisdiction challenges the existence of jurisdictional facts, however, we review the evidence submitted by the parties. *Id.* at 227. "[W]hether undisputed

7

evidence of jurisdictional facts establishes a trial court's jurisdiction is also a question of law." *Id.* at 226. If evidence is submitted regarding the trial court's subject-matter jurisdiction that is intertwined with the merits of the case, we review that evidence to determine if there is a fact question. *Id.* at 227-28. If so, the trial court must deny the plea to the jurisdiction and submit the issue to the finder of fact. *Id.*

## III. INVERSE CONDEMNATION

The City and TxDot concede that the Texas Constitution waives sovereign immunity for inverse condemnation claims. *See Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598-99 (Tex. 2001). They argue, however, that a proper inverse condemnation claim necessarily requires a showing that the claimant had a compensable interest in the property. *See Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 644 (Tex. 2004). If API/Paisano do not have a compensable interest in the property, then TxDot and the City are immune from suit under the doctrine of sovereign immunity. *See id.* at 645-46; *see also Little-Tex Insulation Co.*, 39 S.W.3d at 598-99.

Our decision in the first appeal established that the 2004 Judgment was void, and the 2003 Judgment vested title to the property in the City in fee simple. *Tex. Dept. of Transp.*, 2008 WL 99629, at *4-5. API/Paisano assert, however, that they were subsequent good faith purchasers for value because the 2004 Judgment, which granted the City only an easement and not fee simple title to the property, was recorded in the county deed records, and they relied upon the 2004 Judgment when they purchased the property from White.

The City and TxDot dispute that API/Paisano can be good faith purchasers for value. First, the City and TxDot argue that API/Paisano cannot rely on equitable doctrines,

8

such as the good faith purchaser for value doctrine or estoppel, to take title away from a governmental entity. Additionally, the City and TxDot argue that API/Paisano cannot be good faith purchasers for value because the 2003 Judgment was also recorded and because API/Paisano had actual notice of it. Second, the City and TxDot argue that API/Paisano's suit is really for trespass to try title and negligence, and they have sovereign immunity from these claims. Alternatively, TxDot and the City argue that the easement granted in the 2004 Judgment allows them to take and keep any soil excavated from the drainage ditches; therefore, API/Paisano do not have a compensable property interest in the excavated soil. For the reasons that follow, we disagree.

**A.     Good Faith Purchasers for Value**

Section 13.01(a) of the Texas Property Code provides:

> A conveyance of real property or an interest in real property or a mortgage or deed of trust is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for record as required by law.

TEX. PROPERTY CODE ANN. § 13.01(a) (Vernon 2003). Stated otherwise, a "good faith purchaser for value" is one who acquires real property in good faith, for valuable consideration, and without actual or constructive knowledge of an outstanding equity or an adverse interest or title. *See id.*; *Colvin v. Alta Mesa Res., Inc.*, 920 S.W.2d 688, 691 (Tex. App.–Houston [1st Dist.] 1996, writ denied). It is undisputed that both the 2003 and 2004 Judgments were filed in the official property records prior to API/Paisano's purchase. Additionally, the City and TxDot do not dispute that they agreed to the 2004 Judgment and took steps to have it filed in the property records. The only dispute relates to the legal effect of these actions, which is a question of law that we review de novo. See *Miranda*, 133 S.W.3d at 226.

First, the City and TxDot argue that API/Paisano could not be good faith purchasers for value against the claim of a governmental entity because a party may not acquire a property interest adverse to a governmental entity by the application of an equitable doctrine, citing *Odessa Tex. Sheriff's Posse, Inc. v. Ector County*, 215 S.W.3d 458 (Tex. App.–Eastland 2006, pet. denied), and *Capitol Road & Gun Club v. Lower Colo. River Auth.*, 622 S.W.2d 887, 896 (Tex. App.–Austin 1981, writ ref'd n.r.e.) (op. on reh'g). *Odessa Texas Sheriff's Posse* involved the creation of a "lease by conduct," which is where "a lease may be created by words or other conduct expressing consent to the lessee's possession." 215 S.W.3d at 465. *Capitol Road & Gun Club* involved a claim to property by use of the doctrines of limitations, estoppel, and acquiescence theory. 622 S.W.2d at 896.

However, the "good faith purchaser for value" doctrine is not merely an equitable doctrine—it is statutorily mandated, and no exception is made in the statute for governmental entities. *See* TEX. PROPERTY CODE ANN. § 13.01(a). In fact, other courts have applied the good faith purchaser for value doctrine as against a governmental entity. *See also City of Richland Hills v. Bertelsen*, 724 S.W.2d 428, 430 (Tex. App.–Fort Worth 1987, no writ). Thus, we reject the City and TxDot's argument that they cannot be made subject to API/Paisano's property interest as good faith purchasers for value because governmental entities are subject to the statutorily-imposed good faith purchaser for value doctrine.

The question remains, however, whether API/Paisano had either constructive or actual notice of the City and TxDot's claim to the property in fee simple. API/Paisano does not dispute that it had notice or actual knowledge of both the 2003 and 2004 Judgments,

10

which were filed of record. The question is whether API/Paisano should have known that, after the fact, the City and TxDot would claim that the 2004 Judgment, to which they agreed and which they caused to be filed, was void. We hold that API/Paisano was not required to inquire as to the effect or validity of the 2004 Judgment and was entitled to rely on the 2004 Judgment, filed in the official property records.

"A purchaser is charged with knowledge of the provisions and contents of recorded instruments. Purchasers are also charged with notice of the terms of deeds which form an essential link in their chain of ownership." *Cooksey v. Sinder,* 682 S.W.2d 252, 253 (Tex. 1984) (per curiam). The converse is likewise true—a party who performs a diligent search of the property records is entitled to rely on the recitations in those records when purchasing property, particularly as against the party who causes the recitations to be there in the first place. As the Texas Supreme Court explained as early as 1891:

> Protection is given to a *bona fide* purchaser on the ground that it would be unjust to deprive him of property which he has purchased from another holding all the evidences of right necessary under the law to show that he is the true owner of the thing purchased; and when a person not having the entire beneficial interest is permitted by those having adverse interests to hold the evidences of perfect right in himself prescribed by law for the purpose, among others, of showing who the true owner is, then the law imputes to those having such adverse interest some degree of negligence, for which they ought to suffer, rather than that loss should be imposed on a *bona fide* purchaser from one holding the evidences of complete ownership.

*Patty v. Middle*, 82 Tex. 586, 17 S.W. 909, 911 (Tex. 1891); *see Potka v. Potka*, 205 S.W.2d 51, 54 (Tex. Civ. App.–Waco 1947, writ ref'd n.r.e.) (holding that subsequent purchaser was entitled to rely on a subsequent partition judgment that conflicted with an earlier deed, because the adverse claimants allowed the partition judgment to be entered without asserting their rights).

The 2004 Judgment expressly states that it is

11

in replacement of the "Judgment of Court in Absence of Objection" signed on June 3, 2003 and later recorded as Document Number 1328354, Official Records of Hidalgo County, Texas. This Judgment Nunc Pro Tunc thereby supersedes and makes said "Judgment of Court in Absence of Objection" signed on June 3, 2003 null and void, without effect and vacated by this Court. This Court hereby enters this Judgment Nunc Pro Tunc as the sole final judgment of the case.

The 2004 Judgment was signed by the City's attorneys. The 2004 Judgment, on its face, expressly superseded the 2003 Judgment and contained all the requisites of a valid judgment. *See Slaughter v. Qualls*, 139 Tex. 340, 162 S.W.2d 671, 675 (Tex. 1942) (holding that a party who purchased land in good faith at from a person who acquired the land at a foreclosure sale acquired good title to the land even though the foreclosure sale was deemed void); *Gohlson v. Peeks*, 224 S.W.2d 778, 782 (Tex. Civ. App.–Eastland 1949, writ ref'd) (op. on reh'g). Nothing in the official property records would have revealed that the 2004 Judgment was void because it was issued outside the trial court's plenary power, and we will not require parties to review the contents of the clerk's file in a lawsuit to which they are not a party and form a legal opinion about the validity of a judgment that appears valid on its face. *Cf. Martin v. Cadle Co.,* 133 S.W.3d 897, 905 (Tex. App.–Dallas 2004, pet. denied) (holding purchasers had notice that foreclosure was void because chain of title put them on notice). Thus, we hold that API/Paisano was entitled to rely on the 2004 Judgment as good faith purchasers for value.

## B.     Trespass to Try Title and Negligence

TxDot and the City argue that API/Paisano's claim is really one for trespass to try title, not inverse condemnation, and they are immune from such a suit. Furthermore, TxDot and the City argue that they are immune from any negligence claims asserted by API/Paisano.

12

First, we note that nowhere in API/Paisano's petition do they assert a claim for negligence. In fact, the only claim raised is for inverse condemnation. API/Paisano uses the word "negligence" only to explain their good faith purchaser for value argument—that because TxDot and the City allowed the 2004 Judgment to be entered, the law requires that any harm for that negligence should fall on TxDot and the City. *See Patty,* 17 S.W. at 911 ("[W]hen a person not having the entire beneficial interest is permitted by those having adverse interests to hold the evidences of perfect right in himself prescribed by law for the purpose, among others, of showing who the true owner is, then *the law imputes to those having such adverse interest some degree of negligence*, for which they ought to suffer, rather than that loss should be imposed on a bona fide purchaser from one holding the evidences of complete ownership.") (emphasis added). API/Paisano's citation of *Patty* merely provides the theoretical underpinnings of the good faith purchaser for value doctrine; it does not convert their claim into a negligence claim. *See id.*

Second, TxDot and the City's argument that this suit is one for trespass to try title is not supported by the law. "[A] takings claim is not the functional equivalent of a trespass to try title claim or a suit to quiet title." *Poretto v. Patterson*, 251 S.W.3d 701, 708 (Tex. App.–Houston [1st Dist.] 2007, no pet.). The remedy for an inverse condemnation claim is just compensation for the taking, while a successful trespass to try title claim requires immediate transfer of possession of the property. *Id.* "[A]lthough land ownership is universally an underlying consideration of a takings claim, legislative consent is unnecessary to pursue just compensation (as opposed to possession and title) because the Texas and United States Constitutions already grant private landowners such a right." *Id.* If we were to accept TxDot and the City's argument, no claimant could ever recover for

13

inverse condemnation if the governmental entity challenged the claimant's ownership of the property because, according to TxDot and the City, the claimant would be barred by the doctrine of sovereign immunity from proving ownership. *City of Sunset Valley*, 146 S.W.3d at 644 ("It is fundamental that, to recover under the constitutional takings clause, one must first demonstrate an ownership interest in the property taken."). That is a result that simply cannot obtain.

Accordingly, for all the foregoing reasons, we reject TxDot and the City's argument and overrule their issue in this regard.

## C.     Scope of the Easement

Next, the parties dispute ownership of the soil removed from the property, which is the subject of API/Paisano's inverse condemnation suit. The City and TxDot argue that the easement granted in the 2004 Judgment allowed them to remove soil from the property and to keep it for their own use; thus, API/Paisano do not have any property interest in the excavated soil.

API/Paisano concede that any interest they obtained as good faith purchasers for value is necessarily subject to the easement granted in the 2004 Judgment, which provides:

> [The City] is entitled to condemn, and [does] hereby have judgment against the above named Defendant and any other interested parties for a right of way easement over that real property described in Exhibit "A" and "B" for the purpose of opening, constructing and maintaining a permanent channel or drainage easement in, along, upon and across said property together with the right and privilege at all times of the [City], its agents, employees and representatives of ingress and egress to and from said property for the purpose of making any improvements, modifications or repairs which [City] deems necessary.

API/Paisano further concede that pursuant to the easement, TxDot and the City had the

14

right to excavate the soil in question because the excavation was "reasonably necessary" for the construction of the drainage easement.  API/Paisano argue, however, that once the soil was excavated, TxDot and the City had "no rights whatsoever with respect to the soil."

When considering the terms of an express easement, we apply basic principles of contract construction and interpretation.  *Marcus Cable Assocs. L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002).  The intent expressed in an easement determines the scope of the easement, and unless the easement's language is ambiguous, we look solely to the terms of the written instrument.  *Id.* at 700-01.  "[I]f a particular purpose is not provided for in [a] grant, a use pursuing that purpose is not allowed."  *Id.* at 701 (citations omitted). "Nothing passes by implication 'except what is reasonably necessary' to fairly enjoy the rights expressly granted."  *Id.*

An easement is merely "[']a liberty, privilege, or advantage in land without profit, existing distinct from the ownership of the soil.[']"  *F.J. Harrison & Co. v. Boring & Kennard*, 44 Tex. 255, 1875 WL 7685, at *8 (Tex. 1875) (quoting Herman on Estoppels, sec. 517; 3 Kent's Comm., 565.).

> [A]n easement is a nonpossessory interest, though it authorizes its holder to use the property for a particular purpose.  While establishment of an easement, in general terms, implies a grant of unlimited reasonable use as is reasonably necessary and convenient, the fee owner retains title to the land and all that is ordinarily considered part of that land.

*Brownlow v. State,* 251 S.W.3d 756, 760-61 (Tex. App.–Houston [14th Dist.] 2008, pet. granted) (citing *Marcus Cable Assocs., L.P.*, 90 S.W.3d at 700; *Coleman v. Forister*, 514 S.W.2d 899, 903 (Tex.1974); *Brunson v. State*, 418 S.W.2d 504, 506 (Tex. 1967)).

In *Brownlow*, the Brownlows granted the State an easement to build a water detention facility as part of the State's highway construction project, describing the

15

easement as:

> a permanent easement in the property . . . for the purpose of opening, constructing, and maintaining a detention/mitigation facility in, over, and across the tract of land for the purpose of making additions to, improvements on, and repairs to said detention facility or an part thereof. . . .

*Id.* at 759.  Thereafter, the State began removing large amounts of soil and used the soil in another section of the highway project.  *Id.*  The court held that the easement allowed the State to excavate soil from the property but did not allow the State to take the soil and use it for its own purposes:

> While it may be "reasonably necessary" for the [S]tate to displace the soil to dig the detention facility, the [S]tate provided no testimony or other evidence that it was reasonably necessary for it to cart off an enormous amount of soil to another location not owned by the Brownlows and use it for its own purposes.  This court takes judicial note that in the marketplace today soil is a valuable commodity.  Having bargained only for an easement, the State is not entitled to ownership of the extracted soil.

*Id.* at 762 (internal citation omitted).

As in *Brownlow*, the easement here allowed the City and TxDot to excavate soil to the extent reasonably necessary to fulfill the purpose of the easement:  "opening, constructing and maintaining a permanent channel or drainage easement." The easement, however, does not grant the City and TxDot title to the soil that is removed, which remains the property of API/Paisano.  *Id.*

The City and TxDot rely on *City of La Grange v. Brown*, 161 S.W. 8 (Tex. Civ. App.–Austin 1913, writ ref'd), and *City of San Antonio v. Mullally*, 33 S.W. 256 (Tex. Civ. App.–San Antonio 1895, no writ), arguing that when an easement is granted for highway purposes, the easement also allows the removal of dirt or gravel from the road, and the easement owner may use that dirt or gravel to maintain another street or highway.  These cases are distinguishable in that they deal with the removal of soil, gravel, or other like

16

material from above the grade line of one part of a street or highway to another portion of that or some other street or highway. *See Mullaly,* 33 S.W. at 256; *La Grange,* 161 S.W. at 10. The *Brownlow* court recognized that in *La Grange*, the State came into "incidental possession" of small amounts of soil while grading the highway—the State was not removing large amounts of soil and keeping it without providing an explanation for why that was reasonably necessary. *Brownlow*, 251 S.W.3d at 762.

We likewise agree that the highway-grading cases are distinguishable, and we follow *Brownlow. Id.* The City and TxDot have not provided any explanation for why it was reasonably necessary for it to keep the soil it removed from the drainage ditches. Accordingly, we hold that the easement did not authorize the City and TxDot to keep the soil it removed from the easement, and API/Paisano have a sufficient property interest in that soil to maintain an action for inverse condemnation. Therefore, the City and TxDot do not have sovereign immunity, and we overrule their issue on appeal.[6]

## IV. CONCLUSION

Having overruled the City and TxDot's issue on appeal, we affirm the trial court's order denying their plea to the jurisdiction.

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
26th day of August, 2010.

---

[6] As part of their issue, the City and TxDot argue that it must be presumed that the prior owners recovered all damages to the property in the prior condemnation proceeding and that because the City has already paid for the value of the fee simple interest, any recovery by API/Paisano will be a "double recovery" for the acquisition of the same piece of land. The City and TxDot do not explain why API/Paisano, as good faith purchasers for value, have benefitted in any way from the payment that the City made to White before the City agreed to the 2004 Judgment, on which API/Paisano relied when purchasing the property from White. Furthermore, the City and TxDot do not explain how these arguments relate to the jurisdiction of the trial court, which is all we may review in this appeal. Accordingly, we decline to address them as inadequately briefed. TEX. R. APP. P. 38.1(i).

17