

# IN THE
# TENTH COURT OF APPEALS

## No. 10-11-00095-CV

MARY BLANCHE BOEGNER, AS EXECUTRIX
OF THE ESTATE OF ALLAN PATRICK
(A.P.) BOEGNER AND AS TRUSTEE
OF THE BETTY BLANCHE BOEGNER
REVOCABLE TRUST,

                                                              Appellants

 v.

CHRISTOPHER C. KIRK, SHERIFF BRAZOS
COUNTY, TEXAS AND REVERE FINANCIAL
CORPORATION,

                                                              Appellees


From the County Court at Law No. 2
Brazos County, Texas
Trial Court No. 10-002037-CV-CCL2


## MEMORANDUM  OPINION


By two issues, appellant, Mary Blanche Boegner, as executrix of the estate of Allan

Patrick ("A.P.") Boegner and as trustee of the Betty Blanche Boegner revocable trust,

challenges the trial court's February 24, 2011 final judgment in favor of appellees,

Christopher C. Kirk, Sheriff Brazos County, Texas, and Revere Financial Corporation ("Revere"). We reverse and remand.

## I.   BACKGROUND

Mary a/k/a Betty Blanche Boegner was married to A.P. until his death in 1994. On April 21, 1994, the County Court at Law No. 2 of Brazos County entered an "Order Admitting Will to Probate and Authorizing Letters Testamentary" for A.P.'s estate. Mary was appointed as the Independent Executrix of A.P.'s estate.

In 1995, Revere sued A.P.'s estate, among others, in Monroe County, New York, for default on a note and to foreclose on collateral associated with the note. Mary made an appearance and was represented by counsel in the New York lawsuit.[1] After a foreclosure sale of the underlying property in the New York lawsuit and a motion filed by Mary to dismiss Revere's motion for a deficiency judgment, the New York Court, on March 24, 2000, entered a deficiency judgment against Mary, as executrix of A.P.'s estate, for $15,657.07 plus interest from the date of the foreclosure sale.[2]

In August 2002, Revere filed a petition in the County Court at Law No. 2 of Brazos County, seeking to domesticate the New York judgment in the State of Texas. Mary made an appearance in her capacity as executrix of A.P.'s estate and was represented by counsel.

---

[1] Referring to Defendant's Exhibit 3, Revere alleges that Mary appeared in the New York lawsuit as the executrix of A.P.'s estate. However, it is unclear from Defendant's Exhibit 3 as to the capacity in which Mary made her appearance or the capacity in which she was sued.

[2] In its deficiency judgment, the New York Court stated that Mary appeared in both her individual capacity and her capacity as executrix of A.P.'s estate. Nevertheless, the deficiency judgment was assessed against Mary in her capacity as executrix of A.P.'s estate.

On May 5, 2006, the county court granted summary judgment in favor of Revere and ordered Mary, as executrix of A.P.'s estate, to pay $15,657.07 plus interest as provided in the New York judgment, $2,500 in reasonable attorney's fees, costs of court, and pre and post-judgment interest to Revere. On May 16, 2006, Revere's judgment was abstracted and recorded in Brazos County.

Revere located two parcels of land located in Brazos County, which, according to the property records of Brazos County, were owned by A.P. and/or Mary, as executrix of A.P.'s estate.[3] Revere sought a writ of execution to allow the sheriff to sell the located properties to satisfy the abstracted judgment. The writ of execution was issued on October 29, 2009.

Thereafter, a "Notice of Sheriff's Sale" was issued by Kirk. The notice of sale provided that the Brazos County Sheriff's Office will "sell for cash to the highest bidder, all of the right, title and interest of the Defendant [Mary, as executrix of A.P.'s estate] in and to" three parcels of land on August 3, 2010.

Days before the Sheriff's Sale, Mary filed an original petition and motions for a temporary restraining order and temporary and permanent injunction to stop the sheriff's sale of the properties. In this filing, Mary indicated that she was filing suit in both her capacity as executrix of A.P.'s estate and as trustee of the Betty Blanche Boegner Revocable Trust. The county court granted Mary a temporary restraining

---

[3] At the trial on this matter, Mary asserted that she owned the properties in her individual capacity under A.P.'s will. A.P.'s will was not included in the record.

order and set the matter for a hearing. In accordance with the provisions of the temporary restraining order, Mary posted a $10,000 bond in the county court's registry.[4]

On November 19, 2010, the county court held a bench trial in this matter.[5] In a letter ruling dated January 14, 2011, the county court stated that Mary "does not have standing to enjoin Revere." The county court subsequently entered a final judgment, which ordered that Mary "take nothing by way of her claims for affirmative relief, if any, against Revere." The judgment further stated that Mary "is not entitled to any injunctive relief against Revere . . . and was not entitled to any injunctive relief at the time the Temporary Restraining Order was issued . . . " and that "Revere is allowed all writs and processes necessary to collect this judgment." This appeal followed.

## II. STANDING

In her first issue, Mary contends that the trial court erred in concluding that she lacked standing to seek injunctive relief against Revere in order to clear title to the properties involved in this matter. With regard to both her capacities as executrix and as trustee, Mary asserts that she has a justiciable interest in this matter because her contractual obligations require her to bring suit to defend and warrant title to the properties. Revere responds that Mary, as executrix of A.P.'s estate, had no ownership interest in the properties. Revere also argues that Mary, as trustee of the Betty Blanche

---

[4] The trial court's judgment specifically noted that it "does not resolve any claims, if any, to the Attorney Bond posted by Boegner and her attorney in this case."

[5] At trial, the parties focused almost exclusively on whether Boegner retained an interest in the properties in question.

Boegner Revocable Trust, lacked standing because the properties were allegedly sold and the deeds were not recorded.

## A. Applicable Law

Standing "focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome." *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). Essentially, a plaintiff has standing when she is personally aggrieved, regardless of whether she is acting with legal authority. *See Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996) (holding that the standing doctrine requires that there be (1) "a real controversy between the parties," that (2) "will be actually determined by the judicial declaration sought"). The complained-of injury "must be concrete and particularized, actual or imminent, not hypothetical." *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304-05 (Tex. 2008) (footnotes omitted); *see Tex. Lottery Comm'n v. Scientific Games Int'l, Inc.*, 99 S.W.3d 376, 380 (Tex. App.—Austin 2003, pet. denied) (holding that "[t]o establish standing, one must show a justiciable interest by alleging an actual or imminent threat of injury peculiar to one's circumstances and not suffered by the public generally"); *see also Elizondo v. Tex. Natural Res. Conservation Comm'n*, 974 S.W.2d 928, 932 (Tex. App.—Austin 1998, no pet.) (citing *Warth v. Seldin*, 422 U.S. 490, 498-99, 95 S. Ct. 2197, 2204-05, 45 L. Ed. 2d 343 (1975) (noting that the general standard for determining whether a plaintiff has standing is whether she has such a personal stake in the outcome of the controversy as to warrant invocation of the court's jurisdiction and to justify exercise of the court's remedial powers on her behalf)).

Standing is implicit in subject-matter jurisdiction and cannot be waived. *See Lovato*, 171 S.W.3d at 849; *see also Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). As such, challenges to standing can be raised at any time, including for the first time on appeal. *See Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 850 (Tex. 2000).

## B.     Discussion

The record indicates that Mary entered into a contract to sell the first property—a tract of land located at 207 Trant in Bryan, Texas—to Mario and Sandra Gonzales on September 14, 1994, several months before Revere filed suit in New York.[6] The purchase price was $38,500, with Mary providing seller financing. The Gonzaleses were required to pay Mary monthly installments of $342.60 for twenty years or until the balance of the note was paid in full. Attached to the contract was the following addendum, which was signed by both parties: "The conveyance of this property shall be AS IS, WHERE IS, and Agents, Brokers and Seller [Mary] hereby expressly disclaim and negate: (a) Any implied or express warranty of merchantability, (b) Any implied or express warranty of fitness for a particular purpose, and (c) Any implied or express warranty whatsoever[.]"

The second property—identified as a 3.86-acre tract in Block 21 of the A.P. Boegner subdivision—was conveyed pursuant to a warranty deed with vendor's lien on November 11, 1997, to Ole and Linda Sanchez. And the record does not contain any

---

[6] The September 14, 1994 contract is unclear as to Mary's capacity at the time of the contract. She signed the contract as "Mary E. Boegner" without any designation as Executrix of A.P.'s estate or as Trustee of the Betty Blanche Boegner Revocable Trust.

evidence regarding the alleged third property. None of the contracts or deeds have been recorded in the property records.

Mary's appellate complaints center on the first parcel of land. Mary argues that the contract for deed required her to "bring suit to defend and warrant title to the property," which, ostensibly, conferred standing on her in this matter. We note that Mary's contention is undermined by one of the addenda attached to the September 14, 1994 contract, in which Mary specifically disclaimed and negated "[a]ny implied or express warranty whatsoever." The language contained in this addendum suggests that Mary did not intend to warrant title to the Gonzaleses.

Nevertheless, we find that Mary retains an interest in the property by nature of the contract. As was the case in *Texas American Bank/Levelland v. Resendez*, the grantor—Mary, here—entered into a contract for sale with the grantees—the Gonzaleses—who agreed to pay for the property by monthly installments of $342.60. *See generally* 706 S.W.2d 343 (Tex. App.—Amarillo 1986, no writ). The contract provided that the Gonzaleses had twenty years from the date of the contract—September 14, 1994—to pay for the property, and Mary testified that the Gonzaleses had not yet paid in full.

Similarly, in *Resendez*, a third party—Loveta Alford—sold the surface rights of a piece of property to the grantees—the Resendezes—for $4,000, of which $500 was paid at the time of execution of the instrument and the remainder was paid in monthly installments. *Id.* at 344. This transaction was not immediately recorded, though it was eventually done. *Id.* at 344-45. However, prior to recording the transaction, appellant obtained a judgment of $1,860.61 against Alford. *Id.* at 345. Appellant then tried to

assert a lien against Alford's property. *Id.* at 344-45. After reviewing cross motions for summary judgment, the trial court granted summary judgment in favor of the Resendezes and vested title to the property in the Resendezes free and clear of any lien in favor of appellant. *Id.* at 344.

> In affirming the trial court's judgment, the Amarillo Court of Appeals explained:
>
> A contract of sale, such as the one here in question, is not effective as a conveyance, but is an executory contract for the sale of land. *Federal Life Ins. Co. v. Martin*, 157 S.W.2d 149, 152 (Tex. Civ. App.—Texarkana 1941, writ ref'd). Thus, the contract was not such an instrument that passed an interest in the realty. Similar to the contract in *Jensen v. Bryson*, 614 S.W.2d at 933, it merely specified the conditions for the future passing of the seller's interest to appellees. Until appellees had performed their covenant by the payment of the purchase price, they possessed but an equitable right. *Johnson v. Wood*, 138 Tex. 106, 157 S.W.2d 146, 148 (1941); *Guzman v. Acuna*, 653 S.W.2d 315, 319 (Tex. App.—San Antonio 1983, writ dism'd).

*Id.* at 345. Implicit in the *Resendez* court's conclusion is that Alford retained an interest in the property because the contract was executory in nature. *See id.* And until appellees performed their covenant by payment of the purchase price, Alford retained an interest in the property. *See id.*

In the present case, Boegner testified that the Gonzaleses were still making installment payments pursuant to the executory contract, and the contract itself states that such payments would be made for twenty years from September 14, 1994 or until the note is paid off. Based on these facts, we conclude that Boegner retained an interest in the first property at the time of trial, and as such, we hold that she has a justiciable interest in this matter. *See Lovato*, 171 S.W.3d at 848; *Nootsie, Ltd.*, 925 S.W.2d at 661.

Accordingly, we sustain Boegner's first issue.  Furthermore, we do not reach the second issue.

### III.    CONCLUSION

Because we have sustained Boegner's issue as to standing, we reverse the judgment of the trial court and remand for proceedings consistent with this opinion.


AL SCOGGINS
Justice


Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Reversed and remanded
Opinion delivered and filed June 27, 2012
[CV06]